**TOWERY et al. v. PLAINVIEW BUILDING & LOAN ASS'N.**

No. 4241.

Court of Civil Appeals of Texas. Amarillo.

June 11, 1934.

M. J. Baird, of Plainview, for appellants.

C. D. Russell, of Plainview, for appellee.

HALL, Chief Justice.

The briefs of neither party give us a sufficient statement of the nature and result of the suit.

Plaintiffs' fourth amended petition, upon which the case was tried, shows: That B. H. Towery and wife, Mary L. Towery, filed this suit alleging that the wife is now owner in her separate right and estate of the south one-half of the east one-half of lot 2, block 1, Alabama addition to the town of Plainview, and has been at all times since October 27, 1928, also the owner of that part of lots 1, 2, and 3, block 9, Central Park addition to the town of Plainview which lies south of the Fort Worth & Denver Railway, and has so owned said lots since the 16th day of November, 1925. That from said last-named date until about the 1st of September, 1929, lots 2 and 3 in block 9, Central Park addition to Plainview, constituted the residence homestead of plaintiffs. From said last-named date until the present time the south one-half of the east one-half of lot 2, block 1, Alabama addition to the town of Plainview, was and is the residence of plaintiffs; and that said last-mentioned property has at all times since the fall of 1928 been, and is now, the business homestead of plaintiffs. That on the 5th day of September, 1929, plaintiffs signed a deed of trust purporting to convey to C. D. Russell, trustee for the Plainview Building & Loan Association, a corporation duly incorporated and the defendant in this suit, all of the land hereinabove described and to secure the payment of their indebtedness in the sum of $5,500 to A. B. Cherry. That thereafter said indebtedness was transferred to the defendant association. That said deed of trust and a mechanic's lien executed to secure the payment for improvements on said property are both invalid for the reason that neither was acknowledged by Mrs. Towery in the manner and form required by law. That, in the execution of said instruments, the notary public who took her acknowledgments did not examine her separate and apart from her husband and did not explain said instruments to her and did not ask her if she had signed same willingly and if she wished to retract it. That the notary public, E. M. Osborne, taking the acknowledgment of Mrs. Towery, was disqualified for the reason that he was financially interested in the subject-matter. At said time he was general manager and agent for the Higginbotham-Bartlett Lumber Company, a corporation doing business in Plainview, and was handling its affairs generally. That said company had previously furnished

the labor, pay roll, and material for construction of the building in part to the extent of approximately $500 and at that time had an agreement with A. B. Cherry, grantee named in the mechanic's lien contract as contractor, to the effect that the lumber company would pay for labor and furnish the materials provided for in the mechanic's lien contract and would carry the indebtedness until the loan could be obtained to reimburse him. That, subsequent to the execution of the mechanic's lien contract, the association, through its duly authorized agent, Osborne, negotiated a loan to these plaintiffs to pay off and extend the same debt mentioned in the said mechanic's lien. That, representing the defendant association, Osborne, who was in possession of the deed of trust and note, brought the same to plaintiffs to be signed and acknowledged by them. That Osborne was at that time a stockholder in the said loan association, was financially interested in the result of the transaction, in that he was at the same time general agent and local manager for the lumber company, and that said lumber company received the proceeds of the loan thus obtained from the defendant. That, in order to obtain the deed of trust, Osborne represented to plaintiffs that a loan could be obtained by them to the amount of $5,500 to take up their indebtedness to his lumber company. That he thought the association would make the loan to them on the south one-half of the east one-half of lot 2 in block 1, Alabama addition. That such loan would bear 10 per cent. interest per annum from date and be repaid by plaintiffs in 120 monthly installments of $73.-37 each. That subsequently Osborne again came to plaintiffs' home on September 5, 1929, and said, "I have a paper for you to sign so that I can get the loan as we talked about," and explained that all the property named would necessarily be given as security for said loan. No further explanation was made of said instruments. Plaintiffs relied on his statements and signed the instruments. That he did not take the acknowledgment of plaintiffs, nor either of them, to the deed of trust, his certificate to the contrary notwithstanding. Plaintiffs executed the deed of trust in the presence of each other. That the deed of trust and note provided that the debt secured matured "at and when 55 shares of the capital stock of said Association evidenced by Certificate No. 1—186 in favor of B. H. Towery matured on the books of said Co." That said debt bears 10 per cent. interest from date until maturity and paid, and provides that, if default is made in the payment of the principal or any installment of interest or in the pay-

ment of stock or dues or fines upon the shares of stock or dues and any of said sum shall remain unpaid for 120 days after maturity, defendant may at its option declare the whole debt due. That by its terms the deed of trust made the by-laws of the association part of the contract, and section 17 of the by-laws provides, in part: "All payments for less than the amount due shall be applied as follows: First to fines if any; second, to interest if any; third, to dues." Section 18 provides: "Stockholders failing to make their regular monthly payments as they become due and payable shall be fined 1% per month on the amount due the Association." The deed of trust contains a power of sale, and, when construed as a whole, is materially different from the contract discussed prior to its execution. That Mrs. Towery relied on the representations of Osborne, and signed said instruments without reading the same, and plaintiff would not have signed them had she known such provisions existed therein. Wherefore she has been damaged by said fraudulent representations in the sum of $5,-500.

It is further alleged that the association intentionally charged in said contract more than 10 per cent. interest on the said loan. There is set out the amounts and dates of the several monthly payments alleged to have been made out of her separate funds and estate, beginning September 7, 1929, until and including May 12, 1932. It was further alleged: That Mrs. Towery never at any time knew that stock in said defendant corporation, fines, dues on stock, were provided in said contract, or that her indebtedness matured at and when the stock matured, nor did she know that the date of the maturity of her indebtedness could be accelerated by default in the payment of any of the items named above until she learned said facts in September, 1932. That the contract was never discussed with her by any person prior to said date. That the trustee in the deed of trust, C. D. Russell, has heretofore attempted to make a sale of the property, claiming to act on authority of the instrument and the power contained therein, and has by deed conveyed the property to the defendant association.

The prayer is: That plaintiffs have judgment canceling the deed of trust, the mechanic's lien, and the trustee's deed in so far as the same affect the land of Mrs. Towery. That said note be adjudged usurious and the provisions for interest be declared to be void. That all payments heretofore made be credited upon the principal of said debt, and that

the loan contract be reformed so as to show a loan of $5,500 payable in 120 monthly installments payable monthly, with 10 per cent. interest from date until paid and for all costs of suit.

The petition is verified.

The defendant association answered by general demurrer, special exceptions, a general denial, and by way of cross-action sought, first, to recover the property in trespass to try title. By its second count the defendant alleged: That Towery and wife, about May 22, 1929, executed and delivered to A. B. Cherry their certain promissory note in the sum of $6,000 as consideration for labor and material to be used and which was used in the erection of improvements on the south one-half of the east one-half of lot No. 2, block No. 1, in the Alabama addition to Plainview. That, to secure the payment of said note, the plaintiffs executed and delivered to Cherry a mechanic's and materialman's lien contract upon said property which has been duly recorded. That on or about the 5th day of September, 1929, the plaintiffs represented to defendant association that said note was given for the labor and materials aforesaid and was secured by a mechanic's lien, and on said date procured from the defendant association a loan of $5,-500 with which to pay for said labor and material. That said sum was advanced by the association and used for such purposes, as is alleged in plaintiffs' petition. That on the same day Cherry assigned and transferred said note and mechanic's lien to the association, and the plaintiffs executed their note in the sum of $5,500, payable to the association at the maturity on the books of the payee of 55 shares of the capital stock of the payee evidenced by certificate No. 1—186 in the name of B. H. Towery, with interest from date until paid at the rate of 10 per cent. per annum in equal monthly installments in advance on the 20th day of each month thereafter. That said note provided, if default should be made in the payment of any installment of interest or if any dues or fines on said shares of stock should remain unpaid when due for 120 days, the holders of said note might declare the amount of the note then unpaid due and payable. The note also provided for 10 per cent. additional as attorney's fees. That said $5,500 note was a renewal and extension to that extent of the note executed by plaintiffs to Cherry, and the deed of trust set out in plaintiffs' petition was delivered for the purpose of securing the payment of said note. That default has been made in the payment of the interest on said note, and the association, who is still the owner and holder thereof, has declared the full amount due, and the plaintiffs, though often requested, have failed and refused and still refuse to pay the same, to defendant's damage in the sum of the balance due on said note. That the indebtedness evidenced thereby was created for the benefit of the separate estate of Mrs. Towery, as alleged by plaintiff. The prayer is that defendant recover upon its cross-action in trespass to try title, and, in the alternative, that it have judgment for its debt with interest and attorney's fees, costs of suit, and foreclosure of its lien upon the property.

By a supplemental answer the defendant association repeats the allegations in its original answer as to the original contract between plaintiffs and Cherry and the execution of the mechanic's lien to secure the original note; further setting out the transfer by Cherry of the indebtedness to it, the fact that Towery had subscribed for 55 shares of its capital stock, the loan to plaintiffs for the purpose of paying off the Cherry indebtedness, and alleges that Osborne, who was the duly authorized agent of the plaintiffs in the matter of procuring the loan, represented to defendant that the note and mechanic's lien were valid and binding obligations and constituted a valid lien on the property described, that the defendant relied upon the representations made by Osborne and advanced the money on the faith thereof, and that plaintiffs are now estopped from claiming that the lien was invalid.

In reply to the defendant's cross-action, the plaintiffs filed a supplemental petition repeating in substance the facts as set out in their fourth amended original petition above.

After both parties had closed in the introduction of testimony, the court peremptorily instructed the jury to return a verdict in favor of the defendant association. From a judgment entered in accordance therewith, this appeal is prosecuted.

We think the court erred in directing a verdict for several reasons.

■■ It is held that a stockholder in a corporation is not qualified to take the acknowledgment of an instrument to which the corporation is a party or is beneficially interested, especially if the contract is one creating a mechanic's lien, a lien upon a homestead, or a contract with a building association. The evidence raises the further question whether Osborne was otherwise disqualified by his interest in the transaction. These matters should have been submitted to the jury. 1 Tex. Jur. 442, 445, §§ 32, 33, and 35.

Both the pleadings and the evidence are sufficient to raise the issue of fraud. The allegations that the parties were induced to subscribe for the stock and to execute the instruments sought to be canceled have sufficient support in the testimony to have required the court to.submit the issue to the jury. Fraud in such cases is always a question of fact.

Appellant also makes the contention that the issuance of the stock by the building and loan association in violation of article 12, § 6, of the Constitution, renders the stock and the transaction void. Appellant's brief upon this proposition is so meager and its statement from the record is so confusing that it is impossible for us to pass upon the question without reading the mechanic's lien contract, deed of trust, application for the loan, plaintiff's deed and warranty deed, and the numerous excerpts from the by-laws of the association which appellant insists sustain his proposition. We are not required to read this mass of testimony in order to ascertain the merits of the contention, but the duty rests upon appellant to specifically point out the error by proper statement and reference to the parts of the record which will sustain his contention. We, however, strongly incline to the opinion that the issuance of the stock in this case does not violate that article of the Constitution. There is some confusion in the authorities, and, in view of another trial, we refer counsel to R. S. art. 1310; 10 Tex. Jur. 735–739, and 743, §§ 110, 111, 112, 113, and 115.

For the reasons stated, the judgment is reversed, and the cause remanded.