**TOWERY et al. v. PLAINVIEW BUILDING & LOAN ASS'N.**

No. 4655.

Court of Civil Appeals of Texas. Amarillo.

Nov. 9, 1936.

Rehearing Denied Dec. 21, 1936.

M. J. Baird, of Sherman, for appellants.

P. B. Randolph, of Plainview, for appellee.

JACKSON, Justice.

On a former appeal, reported in (Tex. Civ.App.) 72 S.W.(2d) 948, the judgment was reversed and the cause remanded.

The appellants filed their sixth amended original petition, and the appellee filed its second amended original answer and a cross-action, upon which the case was again tried.

The record shows that lots Nos. 1, 2, and 3, block No. 9, in the Central Park addition to Plainview, were the separate property of Mrs. Mary L. Towery, and will be hereafter designated as the Central Park property. On these lots was a nine-room residence which for several years had been used, occupied, and claimed by Mrs. Towery, her husband, and their family as a homestead. In addition to this residence the appellants had on said lots in 1928 three rent houses.

Some time in July of that year the Fort Worth & Denver-South Plains Railway Company acquired a portion of this Central

Park property for right of way purposes. This necessitated the removal of the nine-room residence from the Central Park property to some other lot. Among other considerations paid for the portion of the Central Park property taken by the Railway Company it agreed to remove and did remove said nine-room residence in the fall of 1928, but to what place the record does not disclose. Until just prior to the removal thereof, the Towerys continued to occupy said house, at which time they, with a part of their furniture, moved into one of the rent houses, which consisted of a front room, bedroom, bathroom, sleeping porch and kitchenette, situated on the Central Park property. The remainder of their furniture they stored in outhouses on said property.

On October 27, 1928, Mrs. Towery purchased, as her separate property, the east one-half of lot 2, in block 1, of the Alabama addition to Plainview, which property was situated outside of the corporate limits of the city, and will hereafter be called the Alabama property. Upon this last-named property at the time of the purchase there was a filling station and several camp cottages.

Shortly after this property was acquired, Mr. Towery moved his rabbitry from the Central Park property to the Alabama property, arranged sleeping quarters thereon for himself and slept there practically all of the time, but he took his meals with the family, who continued to reside on the Central Park property, and divided his work hours between conducting the filling station and cottages and the discharge of his duties as tax collector at his office in the courthouse located in Plainview.

The appellants erected some additional cottages and planted some trees on the Alabama property, and on May 22, 1929, they, after negotiations with A. B. Cherry, a contractor, entered into a written agreement with him to erect for them on the Alabama property a brick veneer house. They contracted to pay him the sum of $6,000, which was evidenced by a note, and executed what on its face purports to be a regular mechanic's and materialman's lien, duly signed and acknowledged by all parties. The contract does not designate the property as a homestead, but the testimony shows that the Towerys told the grantor when they purchased the property, and the contractor when they gave him the lien, that they intended the Alabama property as their home

and were going to move there as soon as the dwelling thereon was completed. The contractor placed the note and mechanic's and materialman's lien with the Higginbotham-Bartlett Lumber Company as collateral to obtain the material and secure money to enable him to discharge his payroll for labor as it accrued.

The dwelling was completed and accepted, and on August 29, 1929, the appellants moved from the Central Park Addition to and occupied the residence on the Alabama property. Until this day the wife and children remaining with their parents had continuously occupied and used the Central Park property as their place of residence, and Mr. Towery had continuously taken his meals with the family at said place.

In order to enable A. B. Cherry to pay the Higginbotham-Bartlett Lumber Company for the materials and money advanced to him and used in the erection of the building, and to enable the appellants to pay Cherry a balance coming to him, he and E. M. Osborne, the general manager of the Lumber Company, negotiated with the Plainview Building & Loan Association of Plainview to secure a loan for the sum of $5,500, and the appellants made written application for such loan. The contractor transferred his lien to the Building & Loan Association, and to secure the payment of the money so advanced, Mrs. Towery and her husband, on the 5th day of September, 1929, executed their deed of trust covering both the Central Park and Alabama properties. The due date of the debt was extended and evidenced by a new note, payable in equal monthly installments. These installments were paid for some time, but after default was made in the payment thereof as they became due, and the taxes for 1931 became delinquent, the properties were duly advertised and sold under the deed of trust, and purchased by the Plainview Building & Loan Association.

The appellants instituted this suit against said association to cancel the contract lien and remove the cloud alleged to have been created thereby from both properties. They pleaded that the Alabama property was their homestead at the time of the execution of the mechanic's and materialman's lien; that on said date a part of the material and labor had been furnished; that the notary, E. M. Osborne, who took their acknowledgments to the instrument, was interested in the transaction; that the deed of trust was void because said E. M. Osborne was a

stockholder in the Plainview Building & Loan Association at the time he took appellants' acknowledgments to the deed of trust, and that he failed to take the acknowledgment of Mrs. Towery privily and apart from her husband.

The appellee answered by general denial, pleaded the validity of the building contract, the deed of trust, the acceptance by appellants of the dwelling, the advance of the $5,500 to pay off and extend the appellants' obligation to Cherry. The appellee also pleaded that in the event the contract lien for any reason was held invalid, that nevertheless A. B. Cherry, the contractor, had entered into a valid contract with Mrs. Towery and her husband to erect the dwelling on the Alabama property, that he had complied with said contract, and at the time of the making thereof the Alabama property was not the homestead of appellants, and the contractor had acquired a constitutional lien, independent of the contract lien, and that appellee was subrogated thereto; and prayed for judgment for its debt and a foreclosure of its liens.

The court, although requested, refused to submit the issue of homestead, and peremptorily instructed the jury to return a verdict in favor of appellee on its cross-action for its debt, principal, interest, costs and attorney's fees, aggregating the sum of $7,-895.80, and foreclosed the lien on the Alabama property.

The jury failed to answer a special issue submitting whether E. M. Osborne, the notary who took the acknowledgment of Mrs. Towery to the deed of trust in favor of appellee, examined her privily and apart from her husband, but did find that at the time said notary took said acknowledgment that the Higginbotham-Bartlett Lumber Company was financially interested in the taking of said deed of trust.

The court entered judgment that all liens asserted against the property of appellants in the Central Park addition be canceled and held for naught; that appellee have judgment on its cross-action against the appellants for the amount of its debt, and a foreclosure of the constitutional lien on the Alabama property, and directed the sale thereof as under execution.

It may be conceded that appellants formed the intention of acquiring a different homestead when the railway right of way was located on a part of the Central Park property; that the purchase of the Alabama property and the improvements placed thereon was to comply with such intention; but the uncontroverted evidence is that the appellants had fixed their homestead rights on the Central Park property long prior to the summer of 1928, and that they continued to occupy the Central Park property, use and enjoy it, until August, 1929, the date they moved to the Alabama property. The written agreement with the contractor to erect a residence on the Alabama property was made May 22, 1929, and recorded June 4th thereafter.

As we understand the law, it is: "Where no homestead dedicated by actual occupancy exists, effect may be given to ownership, intention and preparation to use' for a home, * * *" but when there is a home in fact, such home cannot be "abandoned while actually used as the home of the family, and another homestead acquired by intention at sometime in the future to use it as a home, accompanied with preparation to so improve it, as to make it suitable for such a use." Pierce v. Langston (Tex. Civ.App.) 193 S.W. 745, 747.

This holding is supported by an unbroken line of authorities. Jefferson County Investment & Building Association v. Gaddy et ux. (Tex.Civ.App.) 90 S.W.(2d) 295 (writ denied), and authorities there cited; Adcock v. National Loan & Investment Co. (Tex.Civ.App.) 96 S.W.(2d) 530; Evans et ux. v. Galbraith-Foxworth Lumber Co. (Tex.Civ.App.) 51 S.W.(2d) 831.

Under the record and these authorities, the court was correct in finding as a matter of law that appellants had not acquired homestead rights in the Alabama property at the time of the execution of the building contract and the erection of the building thereunder. Hence, the fact that some labor had been done and some material placed on the property before the execution of the contract in which there is a purported lien, nor that the acknowledgments thereto or to the deed of trust are fatally defective, if they were, do not invalidate the written contract made by appellants with the contractor to erect a dwelling on the Alabama property. This contract gave the contractor a constitutional lien for his work and labor, if not a contract lien, and such lien was assigned to appellee.

Article 16, § 37, of the Constitution of this state, provides: "Mechanics, artisans and material men, of every class, shall have a lien upon the buildings and articles made

or repaired by them for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens."

This article of the Constitution is self-enacting, and the lien therein given exists independent of the statute; Warner Elevator Co. v. Maverick, 88 Tex. 489, 493, 30 S.W. 437, 31 S.W. 353, 499; Farmers' & Merchants' National Bank v. Taylor, 91 Tex. 78, 40 S.W. 876, 966; and creates a lien upon the interest of the person in the property making a valid contract for the erection of a building thereon. Strang v. Pray, 89 Tex. 525, 35 S.W. 1054, 1055.

The contractor not only complied with said section of the Constitution, but also with R.C.S. art. 5452 and article 5453, as amended by Acts 1929, c. 224, § 1 (Vernon's Ann.Civ.St. art. 5453), which provide in effect that every person furnishing material or labor to erect a building shall have a lien thereon, and that every original contractor shall, within four months, after the debt accrues, file his contract in the office of the county clerk of the county where the property is situated. Denny et al. v. White House Lumber Co. et al. (Tex. Com.App.) 54 S.W.(2d) 86.

If we are correct in holding that appellants had no homestead rights in the Alabama property at the time the dwelling was contracted for and erected, appellants' other assignments are immaterial.

The judgment is affirmed.

MARTIN, J., not sitting.

On Motions for Rehearing.

JACKSON, Justice.

Appellants and appellee each in due time filed a motion for rehearing, but neither have presented any additional reasons in support of the contentions urged in the briefs.

The appellee insists that we should consider and sustain its cross-assignment of error, complaining of the refusal of the court to give its requested instruction directing the jury to find a verdict in its behalf.

As disclosed in the original opinion, the suit of appellants was to cancel the deed of trust lien covering both the Central Park property and the Alabama property.

The appellee in its cross-action asserted the validity of the lien evidenced by the deed of trust, and in the alternative, claimed a constitutional lien against the Alabama property.

The court at the conclusion of the evidence peremptorily instructed the jury to find for appellee on its debt, and foreclosed the constitutional lien on the Alabama property and directed the sale thereof as under execution, but decreed a cancellation of the deed of trust held by appellee.

The appellants prosecuted their appeal from the judgment against them, foreclosing the constitutional lien against the Alabama property.

The appellee made no motion for new trial, gave no notice of appeal, filed no appeal bond, and relies for a review of the action of the court in canceling the deed of trust on its cross-assignment of error in the appeal prosecuted by appellants.

In Hunt v. Garrett (Tex.Civ.App.) 275 S.W. 96, 107, the administrator of the estate of G. W. Hunt, deceased, sued W. W. Hunt to recover certain securities of the alleged value of $30,000 belonging to the estate. He also sought in the same action to recover a personal judgment against W. W. Hunt for $3,000, evidenced by his promissory notes.

Upon the conclusion of the testimony, the court peremptorily instructed the jury to find for the administrator on the securities sued for and to find for appellant on the notes upon which the administrator sought personal judgment.

W. W. Hunt prosecuted an appeal, urging as error the action of the court in directing a verdict against him for the securities involved. Relying on this appeal from this judgment by the appellant, the appellee filed cross-assignments of error, complaining of the action of the court in directing a verdict against him on the notes executed to the estate, and on which he sought a personal judgment.

The court, in refusing to consider these cross-assignments, said: "Appellee has also presented several cross-assignments of error, complaining of the court's peremptory instruction to find a verdict against the appellee on the notes executed by defendant as alleged in his petition, etc., but we think we cannot consider these cross-assignments. The appellee at the time did not except to the charge so given, nor did he file a mo- tion for new trial complaining of such ac-

tion, nor did he give notice of appeal from the judgment against him that was rendered in accordance with the peremptory instruction. It is true rule 101, promulgated for the government of district and county courts, provides that an appellee may file cross-assignments of error, but the application of this rule, we think, is confined to the subject-matter and relevant to the questions involved in the appeal actually prosecuted."

In the same case, passed on by the Supreme Court, 283 S.W. 489, 491, it is said: "The plaintiff in error complains also of the failure of the Court of Civil Appeals to consider his cross-assignments of error, directed to that portion of the judgment of the trial court which denies him a recovery on the notes alleged to have been executed by W. W. Hunt. We have carefully considered his contention, and have concluded that the holding of the Court of Civil Appeals relative to such cross-assignments of error is correct, and that that court properly refused to consider such cross-assignments of error for the reasons stated by that court."

These authorities, we think, are decisive against appellee's contention that we should have considered its cross-assignments of error.

Both motions are overruled.