**In re Rudy J. BOHAC, Debtor.**

**Bankruptcy No. 90–10152FM.**

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

May 25, 1990.

Michael Deitch, Deitch, Egan, Greenblum & Hamilton, P.C., Austin, Tex., for debtor.

John M. Scanlan, Scanlan & Buckle, Austin, Tex., for creditors.

## MEMORANDUM OPINION

FRANK R. MONROE, Bankruptcy Judge.

A contested hearing was held on April 24, 1990, pursuant to Objections to Exemptions filed by Don Higginbotham, Successor Administrator of the Estate of Olga C. Bohac, Deceased, and by creditors Dorothy Bohac, Ann Bohac Moriarty, Myra Bohac Valenta, Mark Bohac, Jay Bohac, Lois Bohac and Joseph Bohac (the "Bohac Creditors") wherein the objectors dispute the Debtor's right to claim certain rural real property as his homestead. The Court, having considered the Objection, the Response of the Debtor thereto, the briefs of parties, the arguments of counsel, and its own independent legal research, makes the following Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rules 9014 and 7052 and based thereon denies the claimed exemption.

### Setting the Stage

This exemption litigation is not to be viewed in isolation. It is simply the latest chapter in a rather long book about the inter-familial warfare that has apparently been going on between the Debtor on the one hand and the Bohac Creditors on the other hand since before the death of the matriarch Olga C. Bohac. Some years before her death in 1985, there was a split of the family with she and the Debtor on one side and the Bohac Creditors on the other. The split was such that communication between the sides did not exist at all. The Debtor, upon the death of Olga C. Bohac, was named Independent Executor of her Estate. Unlike 99% of the decedent's estates that are independently administered in the State of Texas, this one was neither simple nor independent of court supervision as the parties chose that arena as a battlefield where they could publicly express their mutual dislike, distrust, and contempt in such a manner as to bring disgrace to the entire family.

One apparently appropriate result of this absurd warfare was the removal of the Debtor as the Independent Executor of the

Estate of Olga C. Bohac and the appointment of Don Higginbotham as Successor Administrator. Another result was the granting of a judgment in favor of the Bohac Creditors against the Debtor in the amount of $178,843.00, which judgment was entered to reimburse the Bohac Creditors for attorney's fees which they had incurred in the probate matter in protecting their legal rights and interests with regard to certain activities of the Debtor while he was serving as Independent Administrator of the Estate of Olga C. Bohac, which the state court jury and the probate court found to be unjustified and actionable. Third, Higginbotham has filed a claim in this case on behalf of the estate for $155,000.00 alleging misappropriation, fraud, defalcation and embezzlement of and by the Debtor while in a fiduciary capacity.

The jury verdict in favor of the Bohac Creditors was handed down on July 14, 1989. Final judgment was signed by the probate court on October 4, 1989. An amended abstract of judgment was filed of record in Williamson County, Texas on October 12, 1989.

Bloodied but not beaten, the Debtor retaliated. Between the date of the rendering of the jury verdict and the entry of the final judgment, the Debtor engaged in aggressive pre-bankruptcy planning. First, he hired his present counsel on or about August 1, 1989. Second, on August 15, 1989, he executed a $50,000.00 promissory note in favor of his probate counsel secured with a pledge of certain farming equipment and trucks. He then signed a $25,000.00 note to other probate counsel secured by livestock and other property. Third, on September 22, 1989, the Debtor filed a formal "Declaration of *Intended* Homestead" (emphasis added) in which he claimed the Homeplace, the 47.7 acres surrounding the Homeplace, and 150.3 acres of the Bartlett Farm (total acreage of Bartlett Farm is 187.98) as his "intended" homestead. The Homeplace is approximately 25 miles from the Debtor's residence at 14 Country Drive, Round Rock, Texas, and the Bartlett Farm is approximately 4½ miles further from the Homeplace. Finally, on October 2, 1989, he signed a $75,000.00 note in favor of Cattle-man's Bank and secured it with 82.5 acres of other non-exempt farmland which was otherwise unencumbered and a $30,000.00 Certificate of Deposit. The purpose of this loan was to borrow enough money to fix up the "Homeplace" as it had become uninhabitable. Today it is still uninhabitable. The Homeplace is the house and approximately two acres that Olga C. Bohac had inhabited during her lifetime. The effect of this last transaction would have been to convert $75,000.00 in non-exempt property to property claimed as exempt in addition to the intended homestead property itself.

Unfortunately for the Debtor, a substantial portion of his pre-bankruptcy planning went awry. First, his probate counsel allowed certain deadlines to pass which has made the potential for effective appeal of the $178,834.00 judgment virtually impossible. Upon learning this, this Court entered its Order of April 24, 1990 which requires the Debtor to take action to cancel the $50,000.00 note and the pledge of collateral to secure the same as well as investigating potential causes of action against such counsel by reason of such mistake. Included would be the potential for a return of $59,888.27 previously paid such counsel. The Debtor must advise the Court by June 5, 1990, of his intentions in this regard.

Next, when the Debtor obtained the commitment of Cattlemen's Bank to loan $75,000.00 for improvement of the Homeplace, he neglected to tell them about the $178,000.00 jury verdict. Not surprisingly, they are no longer interested in loaning him any money. This Court, by Order dated April 24, 1990, has effectively cancelled the pledge of collateral for the $75,000.00 note and that note is of no further force nor effect. Accordingly, the 82.5 acres and the $30,000.00 Certificate of Deposit are now effectively unencumbered.

The pre-bankruptcy planning still remaining intact is the "intended" homestead designation to which the Bohac Creditors have objected.

### Other Salient Facts

Rudy Bohac is a chemist for the Austin Police Department. He is the director of

the forensic lab at the Austin Police Department. Since July 1987, he, together with his wife and 10–year old son, have lived at 14 Country Drive, Round Rock, Texas. The property is part of Wildwood Country Subdivision, which consists of 22 lots each approximately one acre in size. The subdivision is fully developed with only three or four vacant lots. The property is located just outside the eastern city limits of Round Rock, Texas. The Debtor's son attends school in the Round Rock Independent School District. The Homeplace and other rural property claimed as exempt by the Debtor is in the Granger Independent School District.

The Debtor has routinely farmed the Bartlett property as well as the 48 acres surrounding the 2–acre Homeplace. He bought the Bartlett property on December 10, 1979, five days after having received the 48 acres surrounding the 2–acre Homeplace as a gift from his mother, Olga C. Bohac. Apparently, it was around this time that the family feud surfaced. The Debtor has also rented the acreage, and/or portions thereof, from time to time to other individuals on a share cropping basis. No farming or ranching operations at all take place at 14 Country Drive.

It is undisputed that the Debtor presently makes his residence at 14 Country Drive. He has so scheduled it. The Debtor's testimony is that he presently lives at 14 Country Drive and did so on the date of the filing of this case, such being the operative date as of which the Debtor's entitlement to exemptions must be determined. He spends at least five nights a week at 14 Country Drive and his wife spends every night there. He stays at the Homeplace some Friday and Saturday nights due to his farming activities. He has listed 14 Country Drive as his home address on his Internal Revenue Service Forms 1040 for the years 1987 and 1988. It is also undisputed that the Debtor filed an Application for Residential Homestead on January 28, 1988 for 14 Country Drive.

The Homeplace was left to the Debtor by his mother in her will. As early as October 5, 1988, and as late as February 10, 1989, the Debtor publicly avowed that he had given the 2–acre Homeplace to his son, Rudy J. Bohac II. It is important to note that the avowal on February 10, 1989, was made under oath in the lawsuit that resulted in the $178,834.00 judgment. The Debtor's testimony at that deposition was that he had signed a deed conveying the Homeplace to his son but had never recorded it because he was holding it for his son in his desk drawer. The Debtor now claims that he has destroyed that deed. This would have had to have happened sometime subsequent to his sworn testimony on the February 10, 1989 deposition but prior to the filing of his "intended" homestead declaration on September 29, 1989. The Debtor's recollection of exactly when this happened is conveniently hazy. It is also not credible.

The Debtor claims to have abandoned his homestead at 14 Country Drive in Round Rock. Clearly, he did not claim it as exempt upon his schedules; and until midway through the trial of this matter, the admissions of the Debtor and his counsel throughout these proceedings were consistent and vehement to the effect that 14 Country Drive, Round Rock, Texas, was not the Debtor's homestead upon the filing of this case, that the Debtor had, and has, no intention of claiming it as his homestead, and that the Debtor has abandoned it.

### The Surprise Issue

■ Then something strange happened. In the face of his prior consistent attestations and protestations to the contrary, the Debtor attempted to counter his adversaries' argument that the Round Rock homestead had not been abandoned under applicable Texas law as applied to these facts (regardless of the Debtor's intent) by suddenly, and without warning, claiming halfway through the trial that the Round Rock home was in fact a rural home and, therefore, its abandonment was not required because all the Debtor had done was either add non-contiguous tracts to it

or replace it with the Homeplace.[1] This position was clearly inconsistent with his prior pleaded position that he had abandoned it and it would be prejudicial to the Bohac creditors and Higginbotham if the Court allowed the Debtor to make such a change in position in mid-trial. The Debtor did not request the Court either for authority to amend his schedules to claim the Round Rock home as part of his rural homestead (and no request or amendment of such nature has to date been filed) or to amend his responses to the creditors' objections in order to make such a claim. Nor would such an amendment been allowed in the middle of trial as such would clearly have prejudiced the Bohac creditors' and Don Higginbotham's litigation posture and such a request would not have been deemed as having been made in good faith as required by applicable case law. See *Matter of Williamson*, 804 F.2d 1355 (5th Cir.1986). Further, he continued to affirm that the Round Rock home was not his homestead. Such double talk does the Debtor no good. He cannot have his cake and eat it too.

There is nothing in the Debtor's responses to the objections filed to his claim of exemption which indicates any intent on his part to claim either that the Round Rock home is part of his claimed rural homestead or that the Round Rock home is rural in nature. Further, the written objections of both the Bohac Creditors and Don Higginbotham, Successor Administrator put this issue of the rural/urban character of the Round Rock home clearly in issue when they make the following assertion:

"The Debtor has filed a homestead exemption for his *urban* homestead located at 14 Country Drive, Round Rock, Texas, more particularly described as Lot 7 (No. 7) Wildwood Country, a subdivision in Williamson, County, Texas, according to the map or plat thereof in cabinet D, slides 58–59, plat records, Williamson County, Texas, said parcel of land consists of one acre and is Debtor's *urban* homestead and Debtor has not aban-

doned his *urban* homestead." (Emphasis added).

In response to this allegation the Debtor says as follows:

"Debtor denies paragraph 5.C of the Objection *to the extent that Debtor has not claimed the residence in Round Rock, Texas as exempt property nor as his homestead* since Debtor and his wife filed their Notice of Intended Homestead as shown in Exhibit D–2." (Emphasis added).

The Debtor clearly does not deny the allegation of the objecting creditors that the Round Rock home is "urban" in nature. Nor does the Debtor take this opportunity to affirmatively claim that the Round Rock home is rural in nature. Plus, the Debtor claims that he has abandoned the Round Rock home as his homestead. Further, and perhaps of more importance, the Debtor does not claim, and cannot claim, that the 2-acre Homeplace, the surrounding 47.7 acres and the designated 150.3 acres of the Bartlett Farm (a total of 200 acres) are being claimed as non-contiguous portions of his total rural homestead, the base of which is the Round Rock home, because the addition of the Round Rock home would put him over the 200–acre statutory limit. Plus, to the contrary, the Debtor specifically states in his response at paragraph 9 that, "Debtor has abandoned the prior homestead in the Round Rock residence. Acquisition of a new homestead constitutes abandonment of a prior homestead."

It is clear that the Debtor's position prior to trial was that he had abandoned his prior homestead in the Round Rock residence. It is equally clear that the Debtor never denied the allegation that the Round Rock residence was urban in nature. The legal effect of his failure to deny that allegation is that it is now deemed admitted for the purposes of the instant litigation. And the character of the Round Rock property (urban v. rural) is of potential materiality, especially with regard to the Debtor's "Surprise Issue".

---

1. This is without regard to the fact that the Debtor's claim of rural homestead was for a certain definable 200 acres (the statutory maximum), exclusive of the property at 14 Country Road.

Having joined the issues set forth in the objections of the Bohac Creditors and Don Higginbotham in the manner he saw fit in his responses, the Debtor will not now be permitted to rejoin those issues in a different manner or add new ones not originally plead. The Debtor has judicially admitted the urban nature of the property at 14 Country Drive, Round Rock, Texas, in his pleadings. He cannot now contest it at trial and take the position that it is, in fact, rural in nature. Likewise, the Debtor will not be allowed to urge the new and unplead proposition that abandonment of the Round Rock property is not required since it is rural in nature and does not need to be abandoned in order for the Debtor to add to it other non-contiguous rural tracts. This is not only because of the Debtor's judicial admission of its urban nature, but also because of the fact that the Debtor not only has not claimed the Round Rock property as exempt, but he has affirmatively and consistently plead and testified that he has abandoned it. And, therefore, even if it were rural, it cannot now, in mid-trial and with complete and total surprise, be used as the base to which other non-contiguous rural tracts can be added.

The Bohac Creditors and Don Higginbotham are entitled to rely on the Debtor's positions and defenses *as they were plead at the time trial commenced.* The Debtor cannot now change his position in midstream because he has thought of a new legal argument which he thinks is more effective than that which he was urging at the commencement of the trial of this proceeding. Bluntly put, the Debtor filed his pleadings and the Debtor will have to stand on them. The Bohac creditors' objections to the evidence that Debtor offered with regard to the rural/urban character of the property at 14 Country Road, Round Rock, Texas, which the Court carried to the conclusion of the trial is sustained and such evidence is excluded.

### Issues

1. Is the Debtor barred from claiming the 2-acre Homeplace, the surrounding 47.7 acres and the designated 150.3 acres of the Bartlett Farm as his homestead because he has failed to abandon the Round Rock property as his homestead in the manner required by Texas law?

2. Even if the Debtor has abandoned the Round Rock property as his homestead, has he done what is required under Texas law to be able to claim the rural property as his homestead?

3. Does the Debtor or his son own the 2-acre Homeplace?

### Discussion and Authority

Since they are inalterably interrelated, the first two issues will be considered together.

The Fifth Circuit in *Matter of Claflin* set forth the broad rationale behind homestead exemption laws. The Court stated,

"... the purpose of homestead exemption laws is to protect the possession and enjoyment of the individual in property *which is used as his or her home. Texas law reflects this purpose by defining homestead property as property used as the home.* Tex. Const. art. 16, § 51; Tex.Rev.Civ.Stat.Ann. art. 3833 (Vernon 1966) (now recodified at Tex.Rev.Prop. Code Ann. § 14.001 (Vernon 1984))." (emphasis added).

*Hillock Homes, Inc. v. Claflin (Matter of Claflin),* 761 F.2d 1088, 1091 (5th Cir.1985).

The Texas Supreme Court has held that, "before a homestead can be claimed upon land, it must be used for some one purpose of a home, either by cultivating it, using it directly for the purpose of raising family supplies, or for cutting firewood and such like."

*In re Brown,* 78 B.R. 486, 487 (Bankr.N.D. Tex.1987), citing *Autry v. Reasor,* 102 Tex. 123, 113 S.W. 748 (1908).

A homestead once established is presumed to continue until it is abandoned. *Norman v. First Bank and Trust, Bryan,* 557 S.W.2d 797, 801 (Tex.Civ.App.—Houston [1st District] 1977, writ ref'd. n.r.e.); *Gill v. Quinn,* 613 S.W.2d 324, 326 (Tex. Civ.App.—Eastland 1981, no writ); *In re Moore,* 110 B.R. 255, 257 (Bankr.N.D.Tex. 1990). The burden of proof on abandon-

ment is with the party asserting the abandonment. *Burk Royalty Co. v. Riley*, 475 S.W.2d 566, 568 (Tex.1972); *Franklin v. Woods*, 598 S.W.2d 946, 949 (Tex.Civ.App.—Corpus Christi 1980, no writ); *Gill*, supra at 326; *Norman*, supra at 801.

■ The head of a family may not have more than one homestead at a time. *Silvers v. Welch*, 127 Tex. 58, 91 S.W.2d 686, 687 (1936); *Wootton v. Jones*, 286 S.W. 680, 687 (Tex.Civ.App.—Austin 1926, writ dism'd). In order to change a homestead exemption the head of a family must possess the requisite intent to impress homestead qualities on the new property and to abandon the old. *Gilmore v. Dennison*, 131 Tex. 398, 115 S.W.2d 902 (1938, opinion adopted); *Silvers*, supra 91 S.W.2d at 688. More specifically, to impress a homestead quality on new property "there must be an intention by the head of the family to reside upon it with his family as a home ...". *Gilmore*, supra 115 S.W.2d at 902. Abandonment, on the other hand, requires the intent not to return to the previous homestead as well as the intent not to claim a homestead exemption on such property. *Burkhardt v. Lieberman*, 138 Tex. 409, 159 S.W.2d 847, 852 (1942); *Rancho Oil Company v. Powell*, 142 Tex. 63, 175 S.W.2d 960, 963 (1943); *Norman*, supra at 802.

■ However, mere intention by and of itself has never been deemed to be sufficient either with regard to the acquisition of a new homestead or to the abandonment of a previous one. Thus, impression upon a property of homestead qualities must be evidenced, not only by the intent of the individual seeking the homestead exemption, but also by overt acts of preparation consistent with such intention. *Cheswick v. Freeman*, 155 Tex. 372, 376, 287 S.W.2d 171, 173 (1956); *Gilmore*, supra 115 S.W.2d at 902. Concomitantly, abandonment requires not only intent to permanently abandon the former homestead, but also overt acts of discontinued use of the property. *Ingram v. City of Dallas Dept. of Housing & Urban Rehabilitation*, 649 F.2d 1128, 1132 (5th Cir.1981), rehearing denied, 659

F.2d 1075; *Gill*, supra at 327; *Franklin*, supra at 949.

■ Texas courts have held that acquiring a new homestead acts as an abandonment of the previous homestead as a matter of law. *Norman*, supra at 801; *Silvers*, supra 91 S.W.2d at 688; *Rancho Oil Company*, supra 175 S.W.2d at 964; *Matter of Claflin*, supra at 1092. However, close scrutiny of the underlying facts of each of these cases reveals that in each case the intent to establish a new homestead as well as abandon the old was accompanied by an actual removal of the family from the old homestead. Thus, the Texas Supreme Court has been consistent with its prior holdings in ruling that, where the parties have never in fact abandoned the previous homestead, their mere intention to do so cannot constitute abandonment. *Rancho Oil Company*, supra 175 S.W.2d at 964. Conversely, good faith intention to occupy a homestead by and of itself is not sufficient to create a homestead. *Clark v. Salinas*, 626 S.W.2d 118, 120 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.).

The effect of the failure to abandon in fact is that,

"Without the abandonment of an existing homestead, no right can exist to fix that homestead character to another piece of property."

*In re Hunt*, 61 B.R. 224, 229 (Bankr.S.D. Tex.1986).

This estoppel occurs regardless of the avowed intent of the recipient and is well-established in Texas.

"Under Texas law, where no homestead dedicated by actual occupancy exists, effect may be given to the ownership, intention and preparation to use a home. However, when there is a home in fact, such home cannot be abandoned while actually used as the home of the family. *Towery v. Plainview Building and Loan Association*, 99 S.W.2d 1039, 1041 (Amarillo, Tx., Tex.Civ.App.1936, ref.).... Once ... acquired ... that homestead could be abandoned in no other way than moving therefrom with the intention to abandon the same as a home.

*Hollifield v. Hilton*, 515 S.W.2d 717 (Tex.Civ.App.—Ft. Worth, 1974, writ ref'd. n.r.e.); *Jefferson County Investment and Bldg. Assn. v. Gaddy*, 90 S.W.2d 295, 298 (Tex.Civ.App.—Beaumont, 1936, err. ref.)."

*Hunt*, supra at 229.

Both *Towery* and *Jefferson County Investment and Bldg. Assn.* cite numerous Texas cases in support of their position. Among them are, *Pierce v. Langston*, 193 S.W. 745, 747 (Tex.Civ.App.1917); *Archibald v. Jacobs*, 69 Tex. 248, 6 S.W. 177, 178 (1887); *Sharp v. Johnston*, 19 S.W. 259 (Tex.Sup.1892). For additional citations see also, *Floyd v. Rice*, 444 S.W.2d 834 (Tex.Civ.App.—Beaumont 1969, writ ref'd. n.r.e.); *Savell v. Flint*, 347 S.W.2d 24 (Tex. Civ.App.—Eastland 1961, writ ref'd n.r.e.).

▮ In the case at hand, the Debtor's formal Declaration of Intended Homestead must be accompanied with such overt acts as to establish not only the impression of homestead qualities on the Homeplace but also such overt acts as would evidence the requisite requirements for abandonment of the Round Rock home. That has not occurred. The Debtor, by his own testimony before this Court, has evidenced a singular double-mindedness of purpose with regard to both the acquisition of a new homestead as well as the abandonment of his previous homestead. By declaring an intended homestead while at the same time retaining all the accoutrements and benefits of a homestead in the Round Rock home, the Debtor has failed to carry his burden of proof to impress homestead qualities on the Homeplace and surrounding acreage and the Bartlett Farm. The Court finds that the Round Rock property has in fact been the Debtor's homestead since 1987, that such homestead is presumed to have continued, and that absent actual removal from his current homestead, his mere intention with regard to the Homeplace and Bartlett properties are insufficient to constitute a change in his homestead status. Further, his farming of portions of the "intended" homestead property predates his Declaration of Intended Homestead by several years and therefore neither serves as any type of preparatory act nor reflects the type of usage required of the Debtor in addition to his intent in order to establish a new homestead from that in which he presently lives.

"To constitute a rural homestead, the land must be used for a residence and the balance of the tract for support of the family. *Ratliff v. Smith*, 178 S.W.2d 138, 140 (Tex.Civ.App.—El Paso 1943, writ ref'd); *Vaden v. Collier*, 253 S.W. 889 (Tex.Civ.App.—Ft. Worth 1923, no writ) (Rural homestead may be located in separate tracts of land provided one tract is used as a place of residence for a family and the other tracts are used for the purpose of supporting the family.)" *In re Moody*, 77 B.R. 580, 593 (S.D.Tex.1987) aff'd, 862 F.2d 1194 (5th Cir.1989). Here the Debtor does not live upon the rural property claimed as exempt. Neither does he have the present ability to do so. Nor did he on the petition date. He lives at 14 Country Road, Round Rock, Texas. That is his homestead.

The issue of whether the 2–acre Homeplace is owned by the Debtor or his son is moot due to the Court's ruling and, therefore, needs not be decided. However, the position of the Debtor on this issue is clear, i.e. he owns the Homeplace and not his son. Presumably that position will not change.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) of which this Court has jurisdiction under 28 U.S.C. § 1334(a) and (d) and the standing Order of Reference in this District.

A separate Order of even date herewith, consistent with this Memorandum Opinion, will be entered by the Court.