Calvin W. HOLLIFIELD et ux., Appellants,

v.

Frank HILTON et al., Appellees.

No. 17542.

Court of Civil Appeals of Texas, Fort Worth.

Oct. 25, 1974.

Rehearing Denied Nov. 22, 1974.

Burkett & Bodoin and Michael R. Burkett, Fort Worth, for appellants.

Callaway & Marshall and Clyde M. Marshall, Jr., Fort Worth, for appellees, Frank Hilton and L. Wayne Williams.

Law, Snakard, Brown & Gambill and Walter S. Fortney, Fort Worth, for appellee, Mansfield State Bank.

Day & Day, Fort Worth, for appellees, Mansfield State Bank and John A. George, Trustee.

## OPINION

LANGDON, Justice.

This is an action brought by appellants to set aside a foreclosure sale which was regularly held under a deed of trust covering 18 acres of their land. Trial before the court without a jury resulted in judgment for appellees sustaining the foreclosure sale. The appellees (defendants below) are the foreclosing bank-lienholder, the Trustee (Substitute) and purchasers at the sale.

The appellees, Frank Hilton and L. Wayne Williams, are the purchasers at foreclosure, and they seek affirmance of the judgment below quieting their title to the 18 acres of land in litigation.

There is no dispute that the indebtedness was owed and that the appellants were in default. The appellants have not offered to pay or tendered the amount of the indebtedness and they refused to accept the sum of $17,001.05 tendered to them by the trustee, said sum representing the excess bid at the trustee's sale. The trial court rendered judgment that the appellants take nothing except the $17,001.05 tendered into the registry of the court.

This appeal is predicated upon seven points asserting the trial court erred in rendering judgment for appellees because (1) the evidence conclusively established and (2) showed, as a matter of law, that appellants had abandoned that portion of their homestead upon which a mobile home park was located; (3) the finding to the contrary was against the great weight and preponderance of the evidence; (4) in finding that appellants did not offer evidence sufficient to enable it to accurately describe the mobile home park because such finding was against the great weight and preponderance of the evidence; (5) the evidence conclusively established and (6) conclusively showed, as a matter of law, that appellants were not estopped to urge their rights of homestead; and (7) the finding to the contrary was against the great weight and preponderance of the evidence.

We affirm.

This Court has carefully reviewed the entire record in this cause. The following statement is in our opinion a fair summary of the evidence presented to the trial court.

Appellees Hilton and Williams purchased the 18 acre tract which is the subject of this suit at a substitute Trustee's foreclosure sale on March 6, 1973, and claim title under a Trustee's deed. The sale was conducted by appellee John A. George, acting as substitute Trustee under a deed of trust given by appellants Mr. and Mrs. Hollifield to appellee Mansfield State Bank. The deed of trust secured a deed of trust note dated June 6, 1968, by the Hollifields to said Bank. The note and deed of trust were given in renewal and extension of the Hollifields' prior mechanic's lien note and securing mechanic's lien contract dated March 6, 1968, to one George W. Tucker, a contractor, and by him assigned to the Bank. The parties will hereafter be referred to by last names only, and the lienholder simply as the Bank.

The contract was for construction of improvements on the property, consisting of a roadway, utility lines, small concrete patios and a septic tank and underground sewage system, in order for the Hollifields to see if they could rent parking spaces for mobile homes thereon. It was undisputed that both Mr. and Mrs. Hollifield executed and ackowledged the mechanic's lien contract prior to commencement of the work, that the money evidenced by the notes and liens was actually advanced and used for such improvements, that the note was in fact in default, and that the foreclosure sale was in all respects regularly held after prior notice to the Hollifields.

The Hollifields, through their counsel, stipulated in the trial that the Bank's lien was valid as to that portion of the 18 acre tract where the mobile home parking area was actually situated. They, the Hollifields, submit, however, that the lien is not enforceable as to the entire 18 acres because the improvements financed by the loan were not made on their residence or to the whole parcel of land. The improvements were made only upon that portion of the land where the mobile home park is situated and this portion had been abandoned by the Hollifields as their homestead. The

lien can thus be valid only as to the abandoned portion; it cannot extend to the remaining homestead of the Hollifields so say the latter.

The sole question before the trial court was therefore to determine whether the Bank's lien extended to and was valid as to the entire 18 acres or only to that portion of the 18 acres covered by the mobile home park.

Appellants rested their case solely on the testimony of Mr. Hollifield. Mrs. Hollifield was present throughout the trial but never took the witness stand. Mr. Hollifield's testimony is summarized in the paragraph next following.

The 18 acres in issue was part of a 100-acre farm purchased in 1952. He built his home thereon in about 1956. His family had occupied the property ever since as their farm homestead. He used the property for grazing cattle and some crop farming in earlier years. Due to his disability, the use was limited primarily to pasturage in recent years. He had repeatedly sold small tracts off the farm for family income so that its size had been reduced to approximately 60 acres in 1968, when the mechanic's lien contract originated. His decision to try renting spaces in one corner of the farm for temporary parking of mobile homes was also brought about by his inability to perform agricultural labor and a desire to supplement family income. The mechanic's lien contract was made for only 12 mobile home parking spaces with the idea of going into it on a trial basis, not knowing whether it would prove profitable. He saw no inconsistency with his homestead claim for such temporary rental use of that portion of the farm. He always had the express intent that the area covered by the mobile home parking area would remain a part of his homestead. His rentals were always on a temporary basis, month-to-month, so that he could ask any tenant to move on short notice, and that a minimum of effort would be required to return the area to strictly agri-

cultural use because all of the improvements were underground or surface-level improvements, entailing the erection of no buildings or structures. Hollifield furnished to Tucker and the Bank a metes and bounds description and plat of the 18 acres on which he and his wife granted the mechanic's lien which plat did not show the location of the Hollifield house thereon. Hollifield testified that he selected the portion of the farm to be included and had a surveyor draw the plat without an actual survey on the ground. He admitted that he had no recollection of telling the banker that his home was located on the 18 acres and did not know whether he himself even thought about whether his home was on the area covered by the plat.

Both the contractor Tucker and Patterson of the Bank testified that Hollifield told them his home was not on the 18 acres being designated for the mobile home park, but was on an adjoining portion of his farm. They also both testified that while they knew the Hollifield house was in the area, that the boundaries of the 18 acres described in the mechanic's lien contract were never pointed out to them on the ground itself, and neither of them ever realized that the Hollifield house was on such tract, each relying on Hollifield's statement to the contrary.

Patterson, the banker, testified that he had Mrs. Hollifield join with her husband in execution of the mechanic's lien papers simply as a precaution, because of his prior knowledge that the Hollifields had lived on this farm from which the 18 acres was carved, but still relying on Hollifield's statement that the actual house and the area he was going to thereafter claim as homestead was on the remaining adjoining part of the farm still owned by him. The contract executed by Mr. and Mrs. Hollifield contained an express recital that the 18 acres therein described was not owned, used or claimed by them as exempt from forced sale; the deed of trust given by them to the Bank contained express recitals that the 18 acres was not owned, used,

occupied or claimed by them as their homestead or as exempt from forced sale; and they delivered to the title company in the closing of their permanent loan from the Bank their affidavit expressly stating that all recitations in the mechanic's lien contract were true and that the lien evidenced thereby was valid and enforceable against said 18 acres. The Hollifields had also delivered to Texas Electric Service Company an easement for an electric line to the mobile home park containing recitation that the property was no part of their homestead, and Mr. Hollifield executed a financial statement to the Bank wherein the 61-acre farm was described as being comprised of 18 acres in a trailer park and 43 acres in the home tract. Mr. Hollifield also admitted that in 1968 they owned other property in the City of Kennedale on which was located a residence, the contract of purchase therefor reciting it as his mailing address and that he sought to run as a candidate for election to the Kennedale City Council in April, 1968, when the farm house was not within the corporate limits of such city.

 Based upon the evidence in the trial, the trial court made findings and conclusions to the effect that the foreclosed lien was valid and enforceable against the entire 18 acres whether or not the same constituted part of the Hollifield rural homestead, that the use of a portion of said 18 acres for temporary rental for mobile homes was not an abandonment of same as homestead and was not inconsistent with rural homestead thereon, that Hollifields never intended to abandon the same as a part of their homestead, that it was in fact a part of their rural homestead but the foreclosed lien was valid and enforceable as a lien lawfully given for improvements on the homestead, that the Hollifields were estopped by their conduct to assert homestead as a bar to the enforcement of the lien, and that the Hollifields had knowingly permitted the foreclosure sale to proceed on their defaulted note without making any effort to have the

Bank sell less than the full 18 acres on foreclosure. Based upon such findings and conclusions, the trial court entered judgment upholding the foreclosure sale and quieting title of the purchasers at such sale in the entire 18 acre tract.

We find and hold that there was ample evidence to support the trial court's findings and holding that the lien foreclosed was a valid lien upon the entire 18 acre tract whether homestead or not and further that there was ample evidence to support the findings and holding that the appellants did not abandon any part of the 18 acres or a portion of their rural homestead either by intent or by use.

The trial court did not err in rendering judgment for appellees because there was evidence to support its findings that the contemplated construction and use of the mobile home park was not inconsistent or incompatible with appellants' rural homestead upon the larger tract of which the 18 acres was part, at the time the lien attached to the 18 acres.

 It has long been established under Texas law that a rural homestead consists of not more than 200 acres, composed of one or more parcels of land not in a town or city used for the purposes of a home, that only liens for purchase money or improvements or taxes can be enforced against homestead, and that temporary renting of the homestead without acquisition of another does not change its character. Vernon's Annotated Texas Constitution, Art. 16, Secs. 50, 51. It is also settled law that once homestead character has attached to realty and the family relationship continues to exist, it can be terminated only by sale or actual permanent abandonment of use as such. Even actual abandonment without acquisition of another homestead will not terminate the homestead character unless coupled with intent of the head of the household to abandon, if cessation of use is temporary, and there can be no intent to abandon without cessation of use that will destroy the homestead character. Abandonment of homestead is always a question of fact on which both use and intent are relevant. 28 Tex.Jur.2d 536–545, "Homesteads", Secs. 130–134.

In our opinion the authorities cited by the appellants to support their theory of abandonment have no application to the facts of this case. Such authorities relate to urban homesteads or to rural homesteads relating to non-contiguous parcels.

The fact findings by the trial court are amply supported by the evidence, and in view of the law developed by many Texas cases relating to temporary rental of a portion of a rural homestead, any contrary findings by the trial court would have been against the overwhelming preponderance of the evidence. 28 Tex.Jur.2d 513–519, "Homesteads", Secs. 110–115; 2 Speer on Marital Rights in Texas 201–210, Secs. 525–528.

We agree with the Bank that acceptance of the theory relied upon by the appellants would pose a real danger to every homestead claimant in Texas because his homestead would be subject to attack by creditors that he abandoned a portion of his homestead by using it for non-agricultural purposes.

See Ratliff v. Smith, 178 S.W.2d 138 (El Paso Tex.Civ.App., 1943, writ ref.) holding that: "Dedication of a rural homestead is accomplished by occupancy thereof by the head of the family as a place of residence and the use thereof for the support of the family." See also Davis v. Hawn Lumber Co., 193 S.W.2d 263 (Dallas Tex. Civ.App., 1946, no writ hist.) holding: " 'It is the place of the homestead that gives character to it, not the business of the head of the family. If it be in the country, it is a rural homestead; if it be in a city, it is an urban residence.' " See also Posey v. Bass, 77 Tex. 512, 14 S.W. 156 (1890).

We overrule appellants' first three points. We have carefully considered the remaining points. In view of our holding

722

above we see no need to discuss the remaining points. We overrule each of them. The cross-point of appellees Hilton and Williams relating to rentals is also overruled without further discussion.

The judgment of the trial court is accordingly affirmed.