Loyce A. SHEPLER, Appellant,

v.

John A. KUBENA, Appellee.

No. 12646.

Court of Civil Appeals of Texas,
Austin.

March 8, 1978.

Rehearing Denied March 29, 1978.

David B. Dickinson, Dickinson, Crumley & Hull, Houston, for appellant.

R. L. Miller, Miller, Miller & Robinson, Gonzales, and E. A. Arnim, Flatonia, for appellee.

O'QUINN, Justice.

From a judgment in district court awarding John A. Kubena recovery of $49,570.87 and foreclosure of his lien securing the debt against 80 acres of land in Fayette County, Loyce A. Shepler, cross-defendant below, brings this appeal under six points of error.

Under the first three points appellant attacks the judgment with claims of a homestead interest in the land, and under the last three points of error appellant contends that Kubena's claim is barred by limitations. We will affirm the trial court's judgment in part and in part will modify and affirm as modified.

The tangled skein of facts out of which this controversy derives are intricate but are not so complex as to defy disentanglement. Appellant's husband, Dan H. Shepler, acquired the eighty acres involved in this suit in 1961 from Myrtle Combs during Shepler's prior marriage to Rosalie Shepler. Later in 1961 Shepler and his wife Rosalie conveyed the land to Square Peg Farms, Inc., subject to the lien retained by Myrtle Combs securing a note in the principal sum of $6,000. The Sheplers operated Square Peg Farms as an enterprise raising thoroughbred horses, but at no time occupied the land as their homestead.

Dan H. and Rosalie Shepler were divorced in June of 1963, and in the property settlement the husband took the corporation farm properties. Later that year, on October 22, Myrtle Combs sold her note and lien on the eighty acres to South Central Savings and Loan of Brenham. Shortly thereafter, on October 29, Square Peg Farms, Inc., executed a deed of trust to the eighty acres in favor of South Central Savings to secure a note for $25,000.

The following year, in January of 1964, Appellant Loyce A. Shepler and Dan H. Shepler were married. Soon after their marriage the Sheplers moved onto the eighty acres to live in a new house built on the tract in anticipation of their marriage.

Two years later, on March 8, 1966, Square Peg Farms executed a second deed of trust to South Central Savings to secure payment of a note for $38,000, which carried forward the prior $25,000 note and lien. That deed of trust constitutes the instrument with which this lawsuit is concerned.

The following year, in 1967, Square Peg Farms conveyed the eighty acres to Dan H. Shepler in consideration of his assumption of the note secured by the lien. Thereafter, in 1970, Shepler conveyed the property to his wife, Loyce A. Shepler. Shepler left the farm in 1971, and appellant testified at the trial that she had not seen Shepler since that year. The trial court's judgment referred to Dan H. Shepler, who was a party to the suit but made no appearance, as one "whose residence is unknown and who is notoriously insolvent."

Early in 1972, after several installment payments on the note were in default, the trustee for South Central Savings posted notice on February 11 that the deed of trust

lien would be foreclosed and the property sold on March 7, 1972. It was at this stage of the unfolding events that John A. Kubena, now the appellee, was brought into the sequence by appellant, Loyce A. Shepler.

Mrs. Shepler approached Kubena, who was her friend as well as county clerk of Fayette County, about buying the note held by South Central Savings. Kubena agreed to assist Mrs. Shepler and went to Brenham with her to negotiate an assignment of the note. Initially the trustee for South Central Savings was unwilling to assign the note and preferred to proceed with the foreclosure sale in accordance with the notice already posted. Kubena succeeded in persuading the trustee to assign the note to him, and the assignment eventually was accomplished on March 7, the day previously set for foreclosure and sale.

Thereafter, Kubena paid insurance premiums and taxes on the property in further aid of Loyce Shepler. After passage of several months, Loyce Shepler, upon the urging of Kubena, brought suit to remove cloud to title in October of 1972, and Kubena answered and filed his counterclaim, seeking a declaration that his lien was paramount to all interests of Loyce Shepler and of the other lienholders. In keeping with a preconceived plan to effect a private sale, instead of a sheriff's sale, Kubena did not pray for judicial sale. Testimony at the trial indicates that this procedure, by suit to remove cloud, was intended to bring about settlement with other creditors and permit a subsequent private sale in lieu of a forced sheriff's sale in order to obtain a better price for the property.

In May of 1973, before setting or trial in the lawsuit, Loyce Shepler executed a note to Kubena in the principal sum of about $2,353, which represented part of the past due interest and principal on the obligation originally acquired by Kubena from South Central Savings. Kubena retained the original of the note showing an interest rate of "6¾%" per annum and including the following language typewritten at the bottom of the note:

"This is a renewal and extension of past due interest and principal, a note dated March 8, 1966, in the amount of $38,000.00, signed by the Square Peg Farms, Inc., a Corporation, given to the South Central Savings and Loan Association, Brenham, Texas . . . and later Assigned to John A. Kubena . ."

In August of 1973 trial of the lawsuit before the court without a jury failed to develop, and a pretrial conference was held in an attempt to effect settlement of claims by all claimants except Kubena. Loyce Shepler was present, represented by two attorneys, and participated in the conference. When Rosalie Shepler, the first wife of Dan H. Shepler, and the Wellestat Corporation declined to settle their claims at a figure considered reasonable by Loyce Shepler, the latter Mrs. Shepler withdrew and thereby terminated the conference.

The trial out of which this appeal is brought was not held until January of 1977. Prior to trial, Kubena amended his counterclaim in July of 1976 in which for the first time he sought judicial foreclosure under the deed of trust. Loyce Shepler answered and pleaded homestead rights in the property and bar of suit under limitations provided in Article 5520, V.A.C.S. Thereafter, in October of 1976, Loyce Shepler moved for nonsuit with respect to her action to remove cloud, and the motion was granted.

The suit by Kubena on his counterclaim proceeded to trial, and at the close of evidence, on motion of counsel for Kubena, the trial court withdrew the cause from the jury and granted motion for instructed verdict.

Appellant claims, under her six points of error, only two basic grounds: first, that the suit by Kubena is barred because not brought within four years after the action accrued; and, second, appellant's homestead interest in the eighty acres exempts the land from forced sale in satisfaction of a judgment.

Article 5520 provides that all actions for foreclosure of any deed of trust lien on

real estate, securing a promissory note, shall be instituted within four years after the cause of action shall have accrued, and not thereafter. If the note provides that upon default of an installment the holder may accelerate maturity of the note and declare the entire principal due, limitations will begin to run from exercise of the option. *Curtis v. Speck*, 130 S.W.2d 348, 351 (Tex.Civ.App. Galveston 1939, writ ref'd). Appellant insists that South Central Savings exercised its option to accelerate the note in February of 1972 by posting notice of foreclosure and sale, and that because Kubena did not obtain service on appellant on his counterclaim until July of 1976, the suit was barred by the statute.

 The rule is firmly established that the exercise of an option to accelerate maturity must be made in a manner so clear and unequivocal as to leave no doubt as to the holder's intention to apprise the maker effectively that the option has been exercised. *Curtis v. Speck, supra; City National Bank of Corpus Christi v. Pope*, 260 S.W. 903 (Tex.Civ.App. San Antonio 1924, no writ); *National Debenture Corporation v. Smith*, 132 S.W.2d 429, 431 (Tex.Civ.App. Galveston 1939, writ dism'd jdgmt cor.). Intention to mature the note may be evidence by declarations, which alone do not amount to an election, unless followed by affirmative action toward enforcing the declared intention. See *National Debenture, supra*, and cases cited. Also see 5 A.L.R.2d 968.

Loyce Shepler was present with Kubena in Brenham when the trustee, acting for South Central Savings, declined to pursue the course declared in the notice of foreclosure and upon abandonment of the first intention, assigned the note and lien to Kubena.

For additional reasons, the claim by Kubena was not barred. Even if the limitations period had started to run with the notice by South Central Savings, the statute was tolled by the renewal and extension agreement in the note from Shepler to Kubena in May of 1973, under provisions of Article 5522. Although appellant claimed at the trial that her copy of the note did not incorporate the renewal and extension agreement, execution of the note was not denied by verified pleading required by Rule 93(h), Texas Rules of Civil Procedure. The note was received in evidence as fully proved.

If it be said that limitations started to run with filing by Kubena of his counterclaim in February of 1973, service of citation on the counterclaim was obtained in 1976, less than four years later. However, in this case, service did not become necessary to toll the statute, since Loyce Shepler made personal appearance for trial of the cause on the occasion that a pretrial conference resulted in August of 1973, some six months after filing of the counterclaim by Kubena. See 2 McDonald, *Texas Civil Practice*, sec. 7.53 (1970).

 We hold that suit by Kubena under his counterclaim was not barred by the statute of limitations because not brought within four years after acceleration of maturity on the note.

The basis for appellant's claim of a homestead interest in the property, sufficient to prevent foreclosure of the lien held by Kubena, begins with occupancy of the eighty acres by appellant and her husband in 1964. At that time the property was owned by Square Peg Farms, a corporation, which late in 1963 had executed a deed of trust to the eighty acres in favor of South Central Savings to secure a note for $25,000. It appears that when the Sheplers occupied the property as a homestead, it was in subordination to the title of the corporation and amounted at most to a tenancy at will. See *Robb v. San Antonio St. Ry. Co.*, 82 Tex. 392, 18 S.W. 707, 708 (1891); *Cleveland v. Milner*, 141 Tex. 120, 170 S.W.2d 472 (1943).

With the Sheplers still living on the property, Square Peg Farms in March of 1966 executed a deed of trust on the place to South Central Savings, securing a note for $38,000. This deed of trust reflected renewal and extension of the deed of trust given in 1963 securing the note for $24,000, with an additional loan of $14,000.

Appellant contends that because the homestead interest existed on the property in 1964, any lien placed on the property thereafter is invalid under Article XVI, section 50, of the Constitution of Texas. This section (1) restricts power of the holder of the homestead right in encumbering or alienating the homestead interest, and (2) exempts the homestead interest from forced sale in satisfaction of judgments. Since Square Peg Farms, a corporation, could have no homestead interest in the property, its power to borrow money and pledge the realty as security for the debt was not in violation of Section 50.

Encumbrances placed on the property prior to occupancy by the Sheplers as their homestead could not be affected by subsequent impressment of any homestead interest. *First Nat. Bank of Corsicana v. Zarafonetis*, 15 S.W.2d 155, 158 (Tex.Civ. App. Waco 1929, writ ref'd); *Machicek v. Barcak*, 141 Tex. 165, 170 S.W.2d 715, 717 (1943). Occupancy of the property, even with claim of homestead, will not impair an existing deed of trust, nor will it impair power to renew or extend the lien or debt. *Dillon v. Kauffman & Runge*, 58 Tex. 696 (1883); *Price v. McAnelly*, 287 S.W. 77 (Tex. Civ.App. San Antonio 1926, writ dism'd).

Existence of a possessory homestead interest, as held by the Sheplers, did not extend the protection and restrictions of the homestead guaranties to the title owner and thereby impress a homestead upon the corporation as well. Benefits of homestead laws are based upon the homestead claimant's rights in the property and have no separate existence independent of such rights, the result being that the homestead right in property can rise no higher than the right, title, or interest which the claimant owns in the property. *Sayers v. Pyland*, 139 Tex. 57, 161 S.W.2d 769, 773 (1942); see also 40 Am.Jur.2d *Homestead*, sec. 3.

The Sheplers, as holders of a possessory interest homestead in the land, which we find to be that of tenancy at will, were not empowered to restrict the title owner, Square Peg Farms, from encumbering the property which was not used by the fee owner as its homestead. Nor does Loyce Shepler have authority in law to prevent judicial foreclosure and sale of the property, since her homestead exemption from forced sale protects only such estate as she holds in the property. *Sayers v. Pyland, supra.*

We have concluded that Mrs. Shepler, having naked possession without any title when she and her husband occupied the property as their homestead, may maintain her claim of homestead against all creditors save the true owner or one having better title. Only the possessory estate will be protected from forced sale, and the possessory estate will not be affected by sale of fee title. *Cleveland v. Milner*, 141 Tex. 120, 170 S.W.2d 472 (1943), citing as controlling *Birdwell v. Burleson*, 31 Tex.Civ.App. 31, 72 S.W. 446, 449 (Austin 1902, writ ref'd). See also 89 A.L.R. 511, 512–520; 74 A.L.R.2d 1360, sec. 3.

In its judgment the trial court decreed that the "deed of trust and deed of trust lien as it existed on the 8th day of March, A.D. 1966 . . . be and the same is hereby foreclosed and that the Plaintiff Loyce A. Shepler and the Cross-Defendants [naming them] . . . and each of them be. and are hereby forever forclosed [*sic*] against and barred from all right, title, claim and equity of redemption whatsoever in and to the above described land and premises."

Thus the judgment fails to recognize the interest of Mrs. Shepler in her possessory homestead as a tenant at will. The judgment is modified to provide that Mrs. Shepler's homestead interest in the possessory estate of a tenancy at will is not subject to forced sale by her creditors and her homestead estate will survive judicial foreclosure of the deed of trust and sale of the property. The longevity of appellant's estate will depend ultimately upon decision of the new fee title owner, at whose option the tenancy at will may be terminated or extended.

Judgment of the trial court is modified to the extent indicated, and as modified the judgment is affirmed.