In re John Wilmont HUNT and Ann Fisher Hunt, Debtors.

John Wilmont HUNT and Ann Fisher Hunt, Plaintiffs,

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant.**

Bankruptcy No. 85–02273–H1–4.
Adv. No. 85–0803–H3.

United States Bankruptcy Court, S.D. Texas, Houston Division.

May 29, 1986.

---

Peter Johnson, Ziegler & Johnson, P.C., Houston, Tex., for debtors/plaintiffs John Wilmont Hunt and Ann Fisher Hunt.

Jeffrey Herzberg, Federal Deposit Ins. Corp., Midland, Tex., Ronald J. Restrepo, Hutcheson & Grundy, Houston, Tex., for defendant, Federal Deposit Ins. Corp.; Roland M. Chamberlain, Hutcheson & Grundy, Houston, Tex., of counsel.

## MEMORANDUM OPINION

EDWARD J. RYAN, Bankruptcy Judge.

In December, 1981, John Wilmont Hunt ("plaintiff") accepted a position of employment with STM Corporation. He was to begin work on March 1, 1982. Mr. Hunt's new job required the relocation of his wife, Ann Fisher Hunt ("plaintiff"), and his two children, from their residence in Midland, Texas, to Houston, Texas.

Plaintiffs immediately placed their Midland home on the market and started searching for a home in Houston. In early February, 1982, plaintiffs found a suitable house for the family. The purchase price of the Houston home was $228,750 and plaintiffs required financing to purchase it. Plaintiffs applied for a loan through First National Bank of Midland ("Midland Bank").[1]

On February 17, 1982, one day before plaintiffs were to purchase the Houston home ("Houston property"), plaintiffs executed a deed of trust note in favor of Midland Bank in the principal amount of $400,000.[2] At that time, Midland Bank advanced to plaintiffs the sum of $250,000 for the purchase of the Houston property.[3] The deed of trust note cited the not yet acquired Houston property as security for the payment thereof.

On February 18, 1982, plaintiffs used $180,000 of the $250,000 previously advanced to them by Midland Bank to purchase the Houston property.

At the title company closing held on February 18, 1982, plaintiffs accepted a general warranty deed from the sellers, which deed retained a vendor's lien for the benefit of the sellers in the amount of $185,004.91. That vendor's lien was thereafter assigned to Midland Bank, the present holder and beneficiary of that lien.

1. Plaintiffs chose to apply for their loan through Midland Bank because they were already banking there.

2. Plaintiffs contend they signed the promissory note on February 18, 1982, yet, the date typed on the note is February 17, 1982. The note was signed on February 17, 1982. The notation on the back of the deed of trust note states that on February 17, 1982, $250,000 was advanced to plaintiffs.

3. Plaintiffs later received the remainder of the loan amount from Midland Bank.

While at the title closing, plaintiffs executed a deed of trust[4] in favor of Midland Bank, which in effect cast the Houston property as security for the payment of the deed of trust note.[5] That deed of trust was filed in the real property records of Harris County, Texas, on February 19, 1982.

Although plaintiffs purchased the Houston property on February 18, 1982, they did not move to or occupy the property until either late March, 1982, or early April, 1982, when plaintiffs moved from and abandoned their Midland home. The Midland residence eventually was sold on October 3, 1982.

It is undisputed that after making several payments on the $400,000 note and its renewals,[6] plaintiffs ceased to make any further payments on the notes after March 23, 1983.

On October 14, 1983, Midland Bank was declared insolvent by the Comptroller of the Currency, and the FDIC was appointed as its receiver. The FDIC is the current holder of the $400,000 note and all renewal notes thereafter executed by plaintiffs.

On April 12, 1985, plaintiffs sought relief under Chapter 7 of the Bankruptcy Code.

At the filing of plaintiffs' voluntary petition, plaintiffs remained obligated to the FDIC in the principal amount of $377,000 plus accrued interest. While plaintiffs do not contest the amount of the debt owed, they do contest the validity and extent of the FDIC's secured status.

Defendant's position is that the entire $377,000 owed by plaintiffs is a secured debt. Plaintiffs, on the other hand, contend that only $180,000 of the $377,000 debt is secured, as only $180,000 of the $400,000 advanced by Midland Bank was used by them to purchase their Houston home. Plaintiffs argue that the defendant, FDIC, is attempting to impress what they claim is their homestead with a nonpurchase debt.

Before this court is plaintiffs' complaint against Federal Deposit Insurance Corpo-

---

**4.** The deed of trust set forth in pertinent part: "That John W. Hunt and wife, Ann F. Hunt, of Harris County, Texas, hereinafter called Grantors (whether one or more) for the purpose of securing the indebtedness hereinafter described, and in consideration of the sum of TEN DOLLARS ($10.00) to us in hand paid by the Trustee hereinafter named, the receipt of which is hereby acknowledged, and for the further consideration of the uses, purposes and trusts hereinafter set forth, have granted, sold and conveyed, and by these presents do grant, sell and convey unto Charles D. Fraser, Trustee, of Midland County, Texas, and his substitutes or successors, all of the following described property situated in Harris County, Texas, to-wit:
Lot 31, in Block 23, in NOTTINGHAM FOREST, SECTION 3, a subdivision in Harris County, Texas, according to the map thereof recorded in Volume 130, Page 53, of the Map Records of Harris County, Texas.
TO HAVE AND TO HOLD the above described property, together with the rights, privileges and appurtenances thereto belonging unto the said Trustee, and to his substitutes or successors forever. And Grantors do hereby bind themselves, their heirs, executors, administrators and assigns to warrant and forever defend the said premises unto the said Trustee, his substitutes or successors and assigns forever, against the claim, or claims, of all persons claiming or to claim the same or any part thereof.
This conveyance, however, is made in TRUST to secure payment of one (1) promissory note of even date herewith in the principal sum of FOUR HUNDRED THOUSAND AND NO/100 ($400,000.00) executed by Grantors, payable to the order of THE FIRST NATIONAL BANK OF MIDLAND in the City of Midland, Midland County, Texas, as therein provided."

**5.** Plaintiffs also signed a deed of trust to secure assumption at the title closing. The deed of trust to secure assumption was executed to secure the payment of a promissory note in the original principal amount of $51,700 dated October 15, 1970, payable to the order of Holland Mortgage and Investment Corporation. The deed of trust to secure assumption is not in issue in this adversary proceeding.

**6.** On March 1, 1982, plaintiffs made a payment in the amount of $120,000 on the $400,000 deed of trust note.
On August 18, 1982, plaintiffs signed a $304,085.20 note in renewal of the $400,000 deed of trust note, which renewal included an advance of an additional $24,085.20.
On January 5, 1983, plaintiffs paid to Midland Bank $39,565.40 on the renewal note executed on August 12, 1982.
On February 12, 1983, plaintiffs signed a renewal note in the amount of $280,000.
On March 23, 1983, plaintiffs paid to Midland Bank $4,033.12 on the February 12, 1983 renewal note.

ration ("FDIC") requesting rulings on the following:

(i) whether the Houston property was plaintiffs' homestead on February 18, 1982;

(ii) the extent to which the deed of trust encumbers plaintiffs' alleged homestead property;

(iii) whether the debt owed FDIC is wholly or only partially secured;

(iv) whether the FDIC correctly applied payments made by plaintiffs in reducing the balance owed on the $400,000 deed of trust note and its renewals;

(v) whether the payments made by plaintiffs should have been applied first to the $185,004.91 vendor's lien retained in the general warranty deed, or applied first to the remaining balance of $214,995.09 owing on the deed of trust note; and

(vi) whether a release of the vendor's lien releases the deed of trust.

Trial was commenced on plaintiffs' complaint on February 6, 1986. Briefs were submitted by both sides and final arguments were heard on March 13, 1986.

The initial issue is procedural.

Defendant, by its answer dated November 12, 1985, admitted that the Houston property was plaintiffs' homestead on February 18, 1982. However, defendant subsequently argued at trial that the Houston property was not plaintiffs' homestead when the Hunts purchased it.

Plaintiffs argue defendant is estopped from asserting that the Houston property was not plaintiffs' homestead on February 18, 1982. Plaintiffs emphasize that not only did defendant admit that the Houston property was plaintiffs' homestead in its original answer, but on December 5, 1985, when the pretrial conference was held, defendant did not raise the issue of homestead. It was not until December 18, 1985, that defendant requested leave of court to amend FDIC's answer to plaintiffs' complaint to determine validity and extent of FDIC's secured status.

Although defendant's application for leave of court was never scheduled for oral

argument nor was leave of court ever granted, defendant filed its second amended answer on January 29, 1986, wherein defendant denied that the Houston property was plaintiffs' homestead on February 18, 1982.

At trial, defendant again requested a ruling upon its December 18, 1985, motion for leave of court to amend its answer.

The Bankruptcy Rules govern the procedure in the Bankruptcy Courts in cases under Title 11 of the United States Code. Those rules were adopted to secure the just, speedy, and inexpensive determination of every action therein. B.R. 1001. Defendant's application to amend its answer is granted. Fair notice was given. No continuance was sought or needed by plaintiffs. No prejudice to plaintiffs was demonstrated.

There is no contention that the property in Midland, Texas, owned by plaintiffs and actually occupied by them and their children from September, 1980 until February 18, 1982, did not constitute their homestead under the Texas Constitution and laws, prior to the acquisition by plaintiffs of the Houston property.

Plaintiffs do not contend that they are entitled to two different homesteads at the same time. Plaintiffs do urge that their sole homestead on February 18, 1982, was the Houston property. They argue their purchase of the Houston property on February 18, 1982, was with the sole intent to dedicate the property to homestead usage. Plaintiffs claim that their intent to vacate the Midland property together with their intent to improve and occupy the Houston property as a home, coupled with steps toward carrying such purpose into effect, divested the Midland property at once of its homestead character on February 18, 1982, notwithstanding that they continued to own and occupy the home in Midland until late March, 1982, or early April, 1982.

Defendant, however, argues that the Houston property was not plaintiffs' homestead on February 18, 1982, and did not become their homestead until, at the earli-

est, late March 1982, when plaintiffs moved from and abandoned their Midland homestead.

Texas cases have continually held that a homestead is the dwelling house constituting the family residence, together with the land on which it is situated and the appurtenances connected therewith. *Lifemark Corp. v. Merritt,* 655 S.W.2d 310 (Tex.Civ.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.); *Gann v. Montgomery,* 210 S.W.2d 255, 258 (Tex.Civ.App.—Fort Worth 1948, writ ref'd n.r.e.). The possession and use of real estate by one who owns it, and who, with his family, resides upon it, makes it the homestead of the family in law and in fact. *Tolman v. Overstreet,* 590 S.W.2d 635, 637 (Tex.Civ.App.— Tyler 1979, no writ); *Garrard v. Henderson,* 209 S.W.2d 225, 230 (Tex.Civ.App.— Dallas 1948, no writ).

The State of Texas has extended its protection of homesteads to residences of both single and married persons, protecting these homesteads against mortgages, except for purchase money to buy the property, money to pay for work and materials improving the property, or money to pay taxes upon the property. Tex. Const. Art. XVI § 50. No specific writing is needed to claim a homestead. By the mere act of using and enjoying a property as a home, a person qualifies for the protections mandated by the Texas Constitution. *Dodd v. Harper,* 670 S.W.2d 646 (Tex.Civ.App.— Houston [1st Dist.] 1983, no writ); *Hoffman v. Love,* 494 S.W.2d 591 (Tex.Civ.App. —Dallas 1973, writ ref'd at 499 S.W.2d 299 (Tex.1973)).

The initial burden of establishing that property is homestead property is on the claimant of the protection. *Burk Royalty Co. v. Riley,* 475 S.W.2d 566, 568 (Tex. 1972); *Lifemark Corp. v. Merritt, supra* at 314; *Prince v. North State Bank of Amarillo,* 484 S.W.2d 405, 409 (Tex.Civ. App.—Amarillo 1972, writ ref'd n.r.e.); *Pace v. McEwen,* 617 S.W.2d 816, 818 (Tex. Civ.App.—Houston [14th Dist.] 1981, no writ).

In Texas it is well settled that in order to establish homestead rights, a combination of both overt acts of homestead usage and the intention on the part of the owner to claim the land as a homestead must be shown. *Lifemark Corporation v. Merritt, supra* at 314; *Sims v. Beeson,* 545 S.W.2d 262, 263 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.); *Prince v. North State Bank of Amarillo, supra* at 409. Good faith intention to occupy the premises as a homestead alone is not enough to create a homestead. *See, Clark v. Salinas,* 626 S.W.2d 118, 120 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e. at 628 S.W.2d 51 (Tex.1982)).

Plaintiffs contend that they have demonstrated both the intent and overt acts necessary to make the Houston property their homestead.

Plaintiffs put special reliance on *Vaughan, et al v. Sterling Nat. Bank & Trust Co.,* 124 S.W.2d 440 (Tex.Civ.App.— El Paso 1938, writ ref'd), to support their contention that they occupied the property in February, 1982, not with actual physical possession, but with "constructive possession."

That case, however, is readily distinguishable from the case at hand. In *Vaughan,* the persons claiming homestead rights did not have an existing homestead *prior* to their purchase of the property they were then claiming as their homestead. The issue of abandonment of a prior homestead was absent in that case, unlike the case at bar.

Once homestead rights are shown to exist in property, they are presumed to continue, and one asserting an abandonment has the burden of pleading and proving it by competent evidence before a new homestead can be claimed. *Gill v. Quinn,* 613 S.W.2d 324, 326 (Tex.Civ.App.—Eastland 1982, no writ); *Norman v. First Bank & Trust, Bryan,* 557 S.W.2d 797, 801 (Tex. Civ.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.); *McFarland v. Rousseau,* 667 S.W.2d 929 (Tex.Civ.App.—Corpus Christi 1984, no writ).

■ Abandonment of the homestead nature of property cannot be accomplished by intent alone. There must be discontinuance of use, an intention not again to use the property as a home, to constitute abandonment. *Ingram v. City of Dallas Dept. of Housing & Urban Rehabilitation,* 649 F.2d 1128, rehearing denied 659 F.2d 1075 (5th Cir.1981). Without the abandonment of an existing homestead, no right can exist to fix that homestead character to another piece of property.

■ It is evident that plaintiffs could have but one homestead on February 18, 1982. Under Texas law, where no homestead dedicated by actual occupancy exists, effect may be given to the ownership, intention and preparation to use for a home. However, when there is a home in fact, such home cannot be abandoned while actually used as the home of the family. *Towery v. Plainview Bldg. & Loan Assn.,* 99 S.W.2d 1039, 1041 (Amarillo, Tex.Civ.App. 1936, err ref.) Once plaintiffs acquired their Midland homestead by actual occupancy, that homestead could be abandoned in no other way than moving therefrom with the intention to abandon the same as a home. *Hollifield v. Hilton,* 515 S.W.2d 717 (Tex.Civ.App.—Fort Worth 1974, writ ref'd n.r.e.); *Jefferson County Investment and Bldg. Assn. v. Gaddy,* 90 S.W.2d 295, 298 (Beaumont, Tex.Civ.App.1936, err. ref.).

■ Texas courts have always given a liberal construction to the constitution and statutes to protect homestead rights. *Whiteman v. Burkey,* 115 Tex. 400, 282 S.W. 788, 789 (Tex.1926); *In re Parker,* 27 B.R. 932, 935 (Bkrtcy.N.D.Tex.1983). However, even in the most liberal construction, plaintiffs failed to meet their burden of proof on the issues of creation of a new homestead and the abandonment of an existing homestead.

Plaintiffs failed to establish that the Houston property became their homestead, on February 18, 1982. Plaintiffs showed that they well may have intended to dedicate the property for homestead use, but they failed to establish overt acts taken by them which would have made the Houston property their homestead on February 18, 1982.

Plaintiffs failed to establish a *sine qua non* of their case, namely, abandonment of the Midland homestead prior to February 18, 1982.

The Houston property was not plaintiffs' homestead on February 18, 1982.

The vendor's lien in the amount of $185,004.91 and the deed of trust lien in the amount of $400,000 are both valid liens on the Houston property.[7] Defendant's $377,000 debt is fully secured.

As FDIC's debt is fully secured, it is unnecessary to address the issue of where plaintiff's payments should have been applied.

It is so found ordered, adjudged and decreed.

Let judgment enter accordingly.

---

7. The $185,004.91 is a separate superior lien to the deed of trust lien on the Houston property. However, the $185,004.91 is included within the $400,000 owed on the deed of trust note.
The deed of trust states in pertinent part as follows:
$185,004.91 of the note described herein [$400,000] and hereby secured is also secured by the Vendor's Lien Superior Title retained and reserved in that certain deed of even date herewith conveying the herein described property to grantors hereof, and it is agreed that this deed of trust is cumulative of and without prejudice to said lien and title, and that a foreclosure hereunder will operate to foreclose said vendor's lien; said deed being herein referred to for all purposes.