United States Court of Appeals,

Fifth Circuit.

No. 93-7129.

RESOLUTION TRUST CORPORATION as Receiver for Valley Federal
Savings Association, Plaintiff-Appellee,

v.

Guadalupe OLIVAREZ, Sr., et al., Defendants-Appellants.

Aug. 18, 1994.

Appeal from the United States District Court for the Southern
District of Texas.

Before WISDOM, BARKSDALE and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Defendants, Guadalupe Olivarez, Sr. ("Guadalupe"), Viola B.
Olivarez ("Viola"), and their son, Jesus Olivarez ("Jesus"), appeal
a summary judgment entered in favor of the plaintiff, Resolution
Trust Corporation ("RTC"). The summary judgment declares that the
RTC has a valid lien on certain real property in Alamo, Texas, and
the Olivarezes argue that the real estate in question was the
homestead of Guadalupe and Viola when the lien allegedly attached,
such that the lien is invalid under Tex. Const. art. XVI, § 50. We
affirm.

I

Guadalupe and Viola lived at 814 East Citrus Street in Alamo,
Texas, and owned that property prior to the following transactions.
On 11 September 1981 Guadalupe and Viola executed a Residential
Earnest Money Contract, which provided: "Guadalupe Olivarez and
wife, Viola B. Olivarez (Seller) agrees to sell and convey to their

1

son, Jesus G. Olivarez (Buyer) and Buyer agrees to buy from Seller the following property situated in Hidalgo County, Texas, known as 814 East Citrus Street, P.O. Box 141 Alamo, Tx. 78516." Both Guadalupe and Viola signed the contract. Thereafter, on 18 December 1981, Jesus executed a deed of trust conveying to the trustee, for the benefit of Valley Federal Savings and Loan Association of McAllen ("Valley Federal"), the property at 814 East Citrus Street. The deed of trust secured Jesus' debt to Valley Federal in the amount of $36,000, which is evidenced by a note executed 18 December 1981. In 1986 Jesus executed a quitclaim deed, whereby he quitclaimed to Viola and Guadalupe all of his right, title and interest in the East Citrus Street property. The Olivarezes contend that at all times relevant to this litigation Guadalupe and Viola continued to live at 814 East Citrus Street.

Jesus defaulted on the $36,000 note, and the RTC, as receiver for Valley Federal, brought suit in the district court against Viola, Guadalupe, and Jesus "for a declaration establishing a lien against [the East Citrus Street] property ..., for foreclosure of same, and for declaration that any claims of [Guadalupe, Viola and Jesus] be adjudged inferior and secondary to the lien of [the RTC]." The Olivarezes answered, denying that Jesus' note for $36,000, payable to Valley Federal, was secured by the deed of trust on the East Citrus Street property: the Olivarezes alleged that the property purportedly conveyed by Jesus in the deed of trust had in fact been "the subject of a simulated sale, i.e., ownership of the home for all parties concerned remained in the

2

hands of" Guadalupe and Viola at all times. The Olivarezes also alleged in their Answer that, based on "the defense of homestead," the RTC's lien "was not properly attached to said property and is disallowed."

The RTC moved for summary judgment, arguing that the Olivarezes' reliance on an alleged simulated sale was barred by *D'Oench Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed.2d 956 (1942), *Templin v. Weisgram,* 867 F.2d 240 (5th Cir.1989), *cert. denied,* 493 U.S. 814, 110 S.Ct. 63, 107 L.Ed.2d 31 (1989), and 12 U.S.C. § 1823(e) (1988), because the simulated sale was not reflected in Valley Federal's records. In their response to the motion for summary judgment, the Olivarezes disclaimed any reliance on the previously alleged simulated sale of the East Citrus Street property, expressly relying instead on Texas homestead law.

The United States Magistrate Judge recommended that summary judgment be granted for the RTC, on the grounds that the lien created by Jesus' deed of trust remained a valid and existing lien on the property at 814 East Citrus Street. The magistrate held specifically that "[e]ven if the subject property was the homestead of [Guadalupe and Viola] prior to December 18, 1981, it ceased to be their homestead after they transferred all their interest in the property to [Jesus]," and "Article 16 § 50 of the Texas Constitution (re: homestead) has no application in this case as ... [Guadalupe and Viola] sold all their interest in the property and abandoned any homestead claim on or before December 18, 1981." The magistrate further held that Guadalupe and Viola's homestead

3

claim was untenable because it could "only be established by proving the existence of an oral agreement contrary to the written agreement between the parties (the subject Note and Deed of Trust)," and under *D'Oench Duhme, Templin,* and § 1823(e) the Olivarezes were estopped from asserting such a side agreement. The district court adopted the magistrate's report and recommendation, and the Olivarezes appeal.

## II

The Olivarezes contend that the district court erred by granting summary judgment in favor of the RTC. We review the district court's grant of summary judgment de novo. *Davis v. Illinois Cent. R.R.,* 921 F.2d 616, 617-18 (5th Cir.1991). Summary judgment is appropriate if the record discloses "that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Olivarezes contend that summary judgment was improper because, contrary to the magistrate's conclusion, they were not barred by *D'Oench Duhme, Templin,* and 12 U.S.C. § 1823(e) from asserting their claim of a homestead exemption. They argue that *D'Oench Duhme, Templin,* and § 1823(e) are inapplicable because Guadalupe and Viola's homestead claim is not predicated on a side agreement. The Olivarezes also challenge the district court's holding that the property at 814 East Citrus "ceased to be [Guadalupe and Viola's] homestead after they transferred all their interest in the property to" Jesus. The Olivarezes concede that the record reflects a sale of the East Citrus Street property to

4

Jesus,[1] but they argue that Guadalupe and Viola's continued occupancy of the premises is sufficient to sustain their homestead exemption.

We assume *arguendo* that (1) Guadalupe and Viola's homestead claim is not predicated on a side agreement; (2) the district court's reliance on *D'Oench Duhme, Templin,* and § 1823(e) was in error; and (3) the Olivarezes therefore are not estopped from claiming a homestead exemption. We decide only whether the property in Alamo "ceased to be [Guadalupe and Viola's] homestead after they transferred all their interest in the property" to Jesus, despite the fact that they allegedly continued to use the property as their homestead.[2] We review de novo the district court's determination of that state law question. *See Matter of Bradley,* 960 F.2d 502, 507 (5th Cir.1992) ("The de novo standard requires that this Court conduct an independent analysis of Texas homestead law." (citing *Salve Regina College v. Russell,* 499 U.S. 225, 230-232, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991))), *cert. denied,* --- U.S. ----, 113 S.Ct. 1412, 122 L.Ed.2d 783 (1993).

---

[1]Counsel for the Olivarezes conceded this at oral argument.

[2]Guadalupe and Viola's sale of the East Citrus Street property deprived them of any homestead interest which could prevent foreclosure of the RTC's lien. *See infra.* Because Guadalupe and Viola's homestead claim fails on its merits, we affirm the judgment of the district court, and we need not decide the issue of estoppel. The Olivarezes rely heavily on *In re Patterson,* 918 F.2d 540 (5th Cir.1990), *In re Rubarts,* 896 F.2d 107 (5th Cir.1990), *In re Niland,* 825 F.2d 801 (5th Cir.1987), and *In re Howard,* 65 B.R. 498 (Bankr.W.D.Tex.1986), all of which deal primarily with the issue of when a party is estopped from claiming a homestead exemption. Because we do not reach the issue of estoppel, we do not address the Olivarezes' arguments premised on *Patterson, Rubarts, Niland,* and *Howard.*

5

The Constitution of the State of Texas provides:

> The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of both spouses, in the case of a family homestead, given in the same manner as is required in making a sale and conveyance of the homestead; nor may the owner or claimant of the property claimed as homestead, if married, sell or abandon the homestead without the consent of the other spouse, given in such manner as may be prescribed by law. No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the owner alone, or together with his or her spouse, in case the owner is married. All pretended sales of the homestead involving any condition of defeasance shall be void. This amendment shall become effective upon its adoption.

Tex. Const. art. XVI, § 50. "A homestead is the dwelling house constituting the family residence, together with the land on which it is situated and the appurtenances connected therewith." *Lifemark Corp. v. Merrit,* 655 S.W.2d 310, 314 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). "It is well settled in [Texas] that in order to establish homestead rights, the proof must show a combination of both overt acts of homestead usage and the intention on the part of the owner to claim the land as a homestead." *Id.; Sims v. Beeson,* 545 S.W.2d 262, 263 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.).

We assume *arguendo* that Viola and Guadalupe established homestead rights in the property at 814 East Citrus before selling the property to Jesus. The important question, however, is whether the property was the homestead of Guadalupe and Viola on 18

6

December 1981, when Jesus executed the note and deed of trust in favor of Valley Federal Savings. *See Braden Steel Corp. v. McClure,* 603 S.W.2d 288, 294 (Tex.Civ.App.—Amarillo 1980) ("[T]he validity of the deed of trust is determined by the conditions that existed at the time the lien was given...."); *see also Inwood North Homeowners' Ass'n v. Harris,* 736 S.W.2d 632, 635 (Tex.1987) ("[W]hen the property has not become a homestead at the execution of the mortgage, deed of trust or other lien, the homestead protections have no application even if the property later becomes a homestead."). On 18 December Guadalupe and Viola did not have title to the property at 814 East Citrus; title was held by Jesus.[3] Because Guadalupe and Viola occupied the property with Jesus' permission, but without any title to the property, their interest in the premises was a tenancy at will. *See DeGrassi v. DeGrassi,* 533 S.W.2d 81, 87 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.) ("The occupancy of the residence by the grantors after the conveyance was with the permission of [the grantee] and constituted a tenancy at will. That the grantors paid no rent for their occupancy does not affect the existence of the landlord-tenant relationship.").

Under Texas law a homestead claimant need not hold the property in fee simple in order to invoke the exemption. "[A]ny possessory interest in a lot or lots, the fee-simple title not

---

[3]The Olivarezes do not challenge the magistrate's finding—which was adopted by the district court—that "[o]n December 18, 1981, JESUS GUADALUPE OLIVAREZ was the record owner of the property [at 814 East Citrus Street]."

being required to support it, coupled with the requisite occupancy by the husband and his family, is sufficient to support a homestead claim." *Capitol Aggregates, Inc. v. Walker,* 448 S.W.2d 830, 837 (Tex.Civ.App.—Austin 1969, writ ref'd n.r.e.); *First Nat'l Bank of Kaufman v. Dismukes,* 241 S.W. 199, 200 (Tex.Civ.App.—Texarkana 1922, no writ). Furthermore, "[i]t has been held that the rural homestead rights protected by Article 16, Section 50 of the Constitution of Texas may attach to property held ... at the will of the record owners." *Sullivan v. Barnett,* 471 S.W.2d 39, 43 (Tex.1971) (citation omitted) (citing cases).

However, according to the Texas Supreme Court "[i]t is ... a well-recognized principle of law that one's homestead right in property can never rise any higher than the right, title, or interest that he owns in the property attempted to be impressed with a homestead right." *Sayers v. Pyland,* 139 Tex. 57, 161 S.W.2d 769, 773 (1942), *cited in Inwood North Homeowners' Ass'n,* 736 S.W.2d at 636.[4] In *Shepler v. Kubena,* 563 S.W.2d 382 (Tex.Civ.App.—Austin 1978, no writ), that principle was applied to a homestead claimant who, like Guadalupe and Viola, occupied her homestead under a tenancy at will. *See id.* at 386. The Austin Court of Civil Appeals decided that the homestead claimant's "exemption from forced sale protect[ed] only such estate as she [held] in the property," and that the claimant, "having naked

---

[4]*See also Capitol Aggregates,* 448 S.W.2d at 836 (noting that where "the claimant would not have the right of possession or title ... there would be nothing to which a claim of homestead could attach").

possession without any title ... [could] maintain her claim of homestead against all creditors save the true owner or one having better title." *Id.* (citing *Sayers*).[5] It was further held that the "homestead interest in the possessory estate of a tenancy at will ... [would] survive judicial foreclosure of the deed of trust and sale of the property," but "the longevity of [that] estate [would] depend ultimately upon decision of the new fee title owner, at whose option the tenancy at will [might] be terminated or extended." *Id.*

The foregoing decisions suggest that, because Guadalupe and Viola occupied the 814 East Citrus residence with the intent that it would be their homestead, a valid homestead interest attached to their possessory interest in the property. However, because any such homestead interest could rise no higher than Guadalupe and Viola's interest in the property—a tenancy at will—it protects from foreclosure only their right to remain on the property at the will of the title holder. Therefore Viola and Guadalupe do not have a right enforceable against the RTC to possess the East Citrus Street property, and the district court correctly held that the RTC has a valid and existing lien on the property.

A number of Texas cases suggest that absence of record title completely negates any homestead right, despite occupancy of the

---

[5]*See also Cleveland v. Milner,* 141 Tex. 120, 170 S.W.2d 472, 475 (1943) ("Possibly the homestead laws, liberally construed, would have prohibited interference by judicial process with Milner's possession of the premises in a contest between him and his creditor....  Milner had merely permissive and partial possession....")

property by the homestead claimant.[6]   Those decisions provide additional support for our holding that Texas homestead law does not invalidate the RTC's lien.  We need not decide whether those cases would defeat Guadalupe and Viola's homestead interest in their tenancy at will.  Even if Guadalupe and Viola's tenancy at will is protected by the homestead exemption, that tenancy affords them only the right to remain on the property so long as permitted to do so by the title holder.  *See Shepler,* 563 S.W.2d at 386. Therefore neither the validity of the RTC's lien nor its right to foreclose is compromised by the tenancy at will held by Guadalupe

_____

[6]*See Greene v. White,* 137 Tex. 361, 153 S.W.2d 575, 579, 586 (1941) (holding that homestead exemption was unavailable "even though [claimants] were ... living on the land and claiming it as homestead" with the "permission or acquiescence" of the owner, "for they could have no homestead right or interest in land to which they had no title");  *Rettig v. Houston West End Realty Co.,* 254 S.W. 765, 767-68 (Tex.Comm'n App.1923, judgm't adopted) (holding that son had no homestead interest in property, even though he resided upon it with his father's consent, because son had neither title, nor a present right to possess land, nor right to demand partition from father, who was his cotenant);  *Nash v. Conatser,* 410 S.W.2d 512, 521-22 (Tex.Civ.App.—Dallas 1966, no writ) ("It is the law of this state that when ... a business homestead is conveyed to a corporation ... the property is no longer the homestead of the grantors, even though they may continue to occupy it.");  *Sparks v. Robertson,* 203 S.W.2d 622, 626 (Tex.Civ.App.—Austin 1947, writ ref'd) ("One can not have a homestead interest in property the title to which is in neither spouse nor in the community.");  *Williams v. Corpus Christi Bank & Trust Co.,* 104 S.W.2d 56, 57 (Tex.Civ.App.—San Antonio 1937, writ ref'd) ("After the Williams had conveyed this tract to the Townsite Company, it ceased to be their homestead, and ... the fact that they continued to use the land at the sufferance of the grantees[ ] did not change the situation.");  *Hampton v. Gilliland,* 23 Tex.Civ.App. 87, 56 S.W. 572, 573-74 (1900, no writ) (holding that son, who lived on land entirely by virtue of his mother's consent, "owned no estate to which the homestead right could attach," and that "the homestead right cannot be based on so precarious a tenure" as the son's occupancy at the will of his mother).

10

and Viola, and we need not decide whether that tenancy is protected from foreclosure by Texas homestead law.

The Olivarezes contend, nevertheless, that their homestead interest in the East Citrus Street property persisted on 18 December 1981—when Jesus executed the note and deed of trust—because they never abandoned their homestead by discontinuing its use as such. They cite *In re Hunt,* 61 B.R. 224 (Bankr.S.D.Tex.1986), where the bankruptcy court stated, "when there is a home in fact, such home cannot be abandoned while actually used as the home of the family." *Id.* at 229. *Hunt* is factually distinguishable, because the homestead claimant in that case had not alienated title to the homestead. *See id.* at 226. The claimant purchased a new home in Houston and argued that it became his homestead immediately upon its purchase, even though he had not yet sold or vacated his homestead in Midland. *See id.* at 227-29. The bankruptcy court rejected that argument, holding that the claimant's homestead interest remained attached to the Midland property. *See id.* at 229. Because title to the Midland property remained with the homestead claimant, *Hunt* does not stand for the proposition that a homestead interest persists despite alienation of title, so long as occupancy continues.

Furthermore, we do not believe that the rule set out in *Sayers, Inwood North,* and *Shepler*—that a homestead interest can rise no higher than the claimant's interest in the property—is in conflict with the often cited rule that abandonment occurs only

11

when use of the homestead is discontinued.[7] Abandonment and alienation of title have frequently been described as distinct methods of extinguishing a homestead interest. *See, e.g., United States v. Rodgers,* 461 U.S. 677, 686, 103 S.Ct. 2132, 2139, 76 L.Ed.2d 236 (1983) (stating that Texas homestead exemption may not be divested " "except by abandonment or a voluntary conveyance' " (quoting *Paddock v. Seimoneit,* 218 S.W.2d 428, 436 (Tex.1949))); *Matter of Bradley,* 960 F.2d at 507 n. 8 (" "The only way for property to lose its homestead, after it has been dedicated as a homestead, is by death, abandonment or alienation.' " (quoting *Garrard v. Henderson,* 209 S.W.2d 225, 229 (Tex.Civ.App.—Dallas 1948, no writ))); *Intertex, Inc. v. Kneisley,* 837 S.W.2d 136, 138 (Tex.App.—Houston [14th Dist.] 1992, writ denied) ("Th[e] conveyance was made on May 15, 1985. Upon this date, the property ceased being the Bealls' homestead.... The Texas case law is clear that a homestead property loses its homestead protection upon the death of the claimants, abandonment or alienation by them...."); *Hollifield v. Hilton,* 515 S.W.2d 717, 721 (Tex.Civ.App.—Fort Worth 1974, writ ref'd n.r.e.) ("It is settled law that once homestead character has attached to realty and the family relationship continues to exist, it can be terminated only by sale or actual permanent abandonment of use as such."); *Long Bell Lumber Co. v. Miller,* 240 S.W.2d 405, 406-07 (Tex.Civ.App.—Amarillo 1951, no

---

[7]*See, e.g., Franklin v. Woods,* 598 S.W.2d 946, 949 (Tex.Civ.App.—Corpus Christi 1980, no writ) ("Abandonment of a homestead requires both the cessation or discontinuance of use of the property as a homestead coupled with the intent to permanently abandon the homestead.").

12

writ) ("[T]he homestead exemption was not lost by alienation or by death, so we have only the proposition of whether or not the homestead was lost by abandonment."). These cases strongly suggest that alienation of title may result in termination of a homestead interest, even though abandonment by discontinuation of use is not shown.

*Birdwell v. Burleson,* 31 Tex.Civ.App. 31, 72 S.W. 446 (1902, writ ref'd), at first blush seems to suggest that Texas homestead law prohibits foreclosure of the RTC's lien even though Guadalupe and Viola did not hold title to the homestead property when the lien attached. The Court of Civil Appeals in *Birdwell* described the issue before it as follows:

> Briefly stated, the question is whether a father, residing with his minor children upon land, the legal title to which is entirely in the children, and managing and controlling such land, and using the proceeds for the support of himself and the family, has such interest in the land as will form the basis of a homestead exemption. It is true that he has no legal title to the land.... Yet, he is in possession, and his possession is in no wise unlawful or wrongful.... He cannot be said to be an intruder or bare trespasser.

*Id.* at 448. The court held that the property was exempt from foreclosure by a creditor of the father, because "where property is rightfully and peaceably held in possession, and occupied as the home of the family, it should be exempt from forced sale, even though that possession be merely permissive." *Id.* at 449-50.

*Birdwell* is distinguishable, however, because in that case the homestead exemption was not asserted against a creditor of the title holder. In *Birdwell,* the homestead exemption was asserted against a creditor of the father, who held no title to the

13

property. *See id.* at 447. In this case, on the other hand, the Olivarezes press their homestead claim against the RTC as a creditor of Jesus, the title holder to the homestead property. *Shepler* recognized this distinction by holding that the homestead claimant, "having naked possession without any title ... may maintain her claim of homestead against all creditors *save the true owner or one having better title.*" *Shepler,* 563 S.W.2d at 386 (emphasis added). The Court of Civil Appeals in *Birdwell* acknowledged the same principle, quoting the following language from *Pendleton v. Hooper,* 87 Ga. 108, 13 S.E. 313 (1891): "[A]s [Hooper] retained possession, he is still the owner against all the world, except his donees.... Even were he a trespasser relatively to his donees, he would, whilst in possession, be owner relatively to his creditors." *Birdwell,* 72 S.W. at 449. Because Guadalupe and Viola assert their homestead exemption against a party claiming under the title holder, *Birdwell* is not controlling. *See* 43 Tex.Jur.3d *Homesteads* § 45 (1985) ("Mere possession is enough to sustain a claim of homestead and prevent a forced sale against all the world except the true owner and those claiming under him.").

Because Viola and Guadalupe's homestead interest can rise no higher than their interest in the homestead—a mere tenancy at will—the homestead exemption protects, at most, their right to remain on the land at the will of the title holder. Therefore the district court correctly held that the RTC's lien is valid. There is no genuine issue of material fact, and the district court properly granted summary judgment for the RTC.

14

## III

For the foregoing reasons, we AFFIRM.[8]

---

[8]The Olivarezes and the RTC agree that the following conclusion of law in the United States Magistrate Judge's report and recommendation is erroneous in two respects: "17. In the case at hand, summary judgment is proper, because when viewing the evidence in the light most favorable to Plaintiff, there is no genuine issue as to any material fact and Defendants are entitled to judgment as a matter of law." The statement that "Defendants are entitled to judgment as a matter of law" is erroneous because the plaintiff, RTC, not the Defendants, moved for summary judgment. The statement that the court viewed the evidence "in the light most favorable to Plaintiff" was also erroneous. In ruling on a motion for summary judgment, the district court views the evidence in the light most favorable to the party opposing the motion—in this case the defendants, the Olivarezes. Reversal is not required, as the record reveals that the foregoing errors were merely clerical and did not result in prejudice.

15